**In re Maureen ABBATA, Debtor.**

**Bankruptcy No. 92–63303.**

United States Bankruptcy Court,
N.D. New York.

June 18, 1993.

Rosenthal & Drimer, Syracuse, NY (Jeffrey Lee Drimer, of counsel), for Patrick Connelly.

Grass, Balanoff & Whitelaw, P.C., Syracuse, NY (Mary Lannon Fangio, of counsel), for debtor.

Mary Leonard, Cortland, NY, trustee.

### MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The instant contested matter is before the Court by way of an objection filed by the creditor Patrick Connelly ("Connelly") to the exemption claimed by Maureen D. Abbata ("Debtor") in the interest awarded her in her former husband's ("Husband") employer sponsored 401(k) savings plan account.

The Court heard oral argument on January 26, 1993, at its regular motion term held in Syracuse, New York. Thereafter, the parties were provided an opportunity to submit memoranda of law. The matter was submitted for decision on March 1, 1993.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 1334, 157(a), 157(b)(1), 157(b)(2)(A), (B) and (O).

### FACTS

On October 23, 1992, Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). Debtor's Schedule C lists as exempt property her interest in the Husband's Niagara Mohawk ("NIMO") pension. Debtor's responding papers clarify, however, that the claimed exemption is ac-

tually in NIMO's Non–Represented Employees' Savings Fund Plan (the "Plan").

Prior to the commencement of the case, on or about March 2, 1992, the Debtor and her then husband placed a stipulation on the record before the Honorable Rosemary S. Pooler, Justice of the Supreme Court of the State of New York, Onondaga County, settling their action for divorce and determining equitable distribution of marital property ("Stipulation"). The Decree of Divorce ("Decree"), which was signed by Judge Pooler on July 7, 1992, incorporated the terms of the Stipulation. Also on July 7, 1992, Judge Pooler signed an additional order which was captioned: "Qualified Domestic Relations Order" (the "Order").

It appears that at the time of the divorce the Debtor's former Husband was an employee of NIMO and was a participant in several company sponsored pension and retirement savings and profit sharing plans, one of which was the Plan. Pursuant to the Order, the Debtor was to receive a one-half interest in the Husband's Plan account balance which, at the time of the divorce, was estimated to be worth approximately $15,000. Further, the Debtor was also to receive an additional $2,046, payable from the Husband's share of the Plan account, representing payment on arrears arising under a temporary order which had previously been entered by the state court. The Debtor's interest in the Plan was ordered immediately payable in a single lump sum payment.[1]

As of the filing date of the petition the Debtor had not yet received a distribution from the Plan. NIMO has refused to comply with the Order stating, in a letter dated October 28, 1992, that: "[the] order is not in a form that can be accepted as constituting a qualified domestic relations order...." *See* Debtor Memorandum, at Exhibit B.

Despite having not yet received a distribution from the Plan, Debtor's Schedule C lists the entire value of her interest therein, $9,500.00, as exempt property under

§ 5205(c) of the New York Civil Practice Law and Rules ("NYCPLR") (McKinney's 1978 & 1993 Supp.). Connelly, the Debtor's attorney in the matrimonial action, filed the within objection on December 21, 1992.

### ARGUMENTS

Connelly contends that the interest in the Plan awarded to the Debtor under the Order constitutes nothing more than a future interest of the Debtor in a cash payment which cannot be considered exempt property under NYCPLR § 5205(c). Specifically, Connelly asserts that: i) the trust exemption provided under NYCPLR § 5205(c)(1) is intended to protect only that judgment debtor for whom the funds are held in trust—in this case the Husband who was the employee/participant in the Plan, not the Debtor; ii) to the extent that the exemption applies at all, the funds are exempt only so long as they are held in trust, accordingly the funds subject to the Order became immediately payable to the Debtor and are therefore no longer protected; and iii) the transfer of an interest in the Plan to the Debtor constituted a transfer of trust funds to a third party, as such, the funds in the hands of the Debtor are no longer exempt from application by judgment creditors.

The Debtor takes the position that the Plan is a qualified retirement savings plan established under § 401 of the United States Internal Revenue Code of 1986, as amended (26 U.S.C. §§ 1–9722) ("IRC"). The Debtor contends that since the funds payable to her under the Order emanate from a qualifying plan they are wholly exempt from application by judgment creditors under NYCPLR § 5205(c)(2), as amended, and may, therefore, be claimed as exempt under her bankruptcy petition pursuant to § 282(2)(e) of the New York Debtor & Creditor Law ("NYD & CL") (McKinney's 1990).

### DISCUSSION

■ Pursuant to Code § 541(a)(1), the commencement of a case in bankruptcy cre-

---

**1.** Under the Order the Debtor also received a future interest in the Husband's Nimo pension which was to become payable at the time of his

retirement. As of the hearing on this contested matter, however, no exemption has been claimed for that interest.

ates an "estate" comprised of all equitable or legal interests of the debtor in property. Property of the estate is a concept of exceptional breadth encompassing all interests of the debtor in property, certainly those which may be needed for a fresh start. *See In re Brown,* 734 F.2d 119, 123 (2d Cir.1984); *In re Boon,* 108 B.R. 697, 700 (W.D.Mo.1989). Pursuant to Code § 522, however, the debtor is permitted to claim certain of these property interests as exempt. *See In re Boon, supra,* 108 B.R. at 700.

As authorized under Code § 522(b)(1) New York has "opted out" of the federal exemption scheme, choosing instead to provide its own exclusive set of exemptions in bankruptcy. *See* NYD & CL §§ 282 and 284. NYCPLR § 5205, listed among those exemptions permissible under NYD & CL § 282(2)(e), defines what personal property may be claimed as exempt.

Subsections (c) and (d) of NYCPLR § 5205 apply to interests of the debtor in "qualified" retirement plans. In pertinent part, NYCPLR §§ 5205(c)(2) and (3), as amended, provide:

(2) [A]ll trusts, custodial accounts, annuities ... monies assets or other interests established as part of, and all payments from, either a Keogh (HR–10), retirement or other plan established by a corporation, which is *qualified under section 401 of the United States Internal Revenue Code of 1986,* as amended, or created as a result of rollovers from such plans ...

\* \* \* \* \* \*

(3) shall be conclusively presumed to be spendthrift trusts under this section and the common law of the state of New York for all purposes, including ... all cases arising under ... the United States Bankruptcy Code...."

*Id.* (emphasis added).

■ NYCPLR §§ 5205(c) and (d) were amended in 1989 apparently to prevent federal bankruptcy courts, which apply state law in such matters, from directing money from the debtor's retirement fund into the hands of non-family creditors. *See In re*

*Mann,* 134 B.R. 710, 714 (Bankr.E.D.N.Y. 1991) (citing NYCPLR § 5205 (Supp.1992)) (Supplementary Practice Commentaries, Income Exemptions, by D. Siegel, 1989). The 1989 amendments mark a change from prior law, making all interests in or payments from qualifying retirement plans wholly exempt from the reach of creditors. *See id.* (citing Statement of Assemblyman Sheldon Silver, New York State Legislative Annual, p. 159). This change is explained by Professor Siegel in his commentary to NYCPLR § 5205:

Before the amendment, it [paragraph one of subsection (d)] exempted 90% of trust income with no stated exception for a Keogh or like plan, and the opening language of subdivision (d) enabled the court to invade the presumably exempt 90% as well if it found that not all of the 90% was necessary for the debtor's family. *The amendment changes that in two ways. First, it makes such money 100% instead of just 90% exempt. Second, it takes all discretion away from the court to invade any part of the income even upon a finding that family needs are satisfied.*

NYCPLR § 5205, *supra* (Supplementary Practice Commentaries, by D. Siegel) (emphasis added).

■ The Plan in the matter *sub judice* is a qualified retirement plan within the meaning of NYCPLR §§ 5205(c)(2) and (3). The Plan Prospectus ("Prospectus") advises that the Plan is a "Profit–Sharing Plan with a 401(k) qualified cash or deferred arrangement feature". *See* Prospectus p. 13. To be qualified under IRC § 401(k), a plan must contain a non-alienation provision. *See* IRC § 401(a)(13)(A). The Plan Document, at Art. XVII, ¶ 17.4, satisfies this requirement by providing:

Except as otherwise provided by law or the issuance of a 'qualified domestic relations order' (within the meaning of [IRC] Code section 401(p)), no person shall have the right to assign, alienate, transfer, hypothecate or otherwise subject to lien his interest in or his benefit under the Plan, nor shall benefits under

the Plan be subject to the claims of any creditor.

*Id.*

Connelly does not contest the qualified status of the Plan nor the Husband's interest therein under NYCPLR § 5205(c). Rather, Connelly contends, *inter alia*, that the Debtor is not the benefitted party within the meaning of that statute, and may not therefore claim her interest in the Plan as exempt. This interpretation of the statute, however, improperly characterizes the Debtor's interest in the Plan as merely the right to receive a cash payment from the Husband's Plan account. As will be discussed, *infra*, the interest to which the Debtor became entitled under the Order is in the nature of an ownership interest in a distinguishable pool of retirement funds.

■ First, both the IRC and the Employee Retirement Income Security Act of 1974 ("ERISA") expressly provide for the division of pension and qualifying profit sharing plans pursuant to qualified domestic relation orders ("QDRO"). *See* IRC § 401(a)(13)(B); ERISA § 1056(d)(3)(A); *In re Long,* 148 B.R. 904, 906 (Bankr.W.D.Mo. 1992). A QDRO is a special type of domestic relations order which recognizes the existence of an "alternate payee's" right to receive all or a portion of the benefits payable to a participant under a qualifying plan. *See* ERISA § 1056(d)(3)(B)(i)(I).

■ This exception to the otherwise stringent anti-alienation requirements of both the IRC and ERISA results from amendments required under the Retirement Equity Act of 1984 ("REA"), Pub.L. 98–397, 98 Stat. 1426, and was added to better protect the financial security of non-employee spouses after divorce or death of the income earning spouse. *See Ablamis v. Roper,* 937 F.2d 1450, 1453–54 (9th Cir. 1991). Thus, to the extent that a domestic relations order satisfies the requirements of a QDRO, *see* IRC § 414(p)(1)–(4), and ERISA § 1056(d)(3)(B)–(E), it constitutes a recognition of the non-employee spouse's ownership interest in a portion of the retirement benefits that were earned during the marriage. *See In re Long, supra,* 148

B.R. at 907–08; *Ablamis v. Roper, supra,* 937 F.2d at 1454; *see also In re Resare,* 142 B.R. 44 (Bankr.D.R.I.1992), *aff'd,* 154 B.R. 399 (D.R.I.1993) (former spouse's interest in the employee spouse's pension plan became absolute upon the granting of the divorce, and thereafter was the sole and separate property of such spouse, not a dischargeable debt of the employee/debtor spouse). Moreover, a distribution received under a QDRO may be rolled over into an eligible retirement plan, such as an Individual Retirement Account, so as to preserve the fund pending such alternate payee's retirement. *See* IRC § 402(a)(6)(F).

■ In the instant matter, despite being captioned a "Qualified Domestic Relations Order" it appears that the plan administrator, an entity which is authorized to determine the qualified status of a QDRO, *see* IRC § 414(p)(6)–(7), has rejected the Order as not satisfying the requirements of the statute. *See* Debtor's Memo, at Exhibit B. While the Debtor's ability to receive a distribution under the Plan turns on the qualified status of the Order, a determination here as to its exemptibility is not premature since the Order presently constitutes a recognition of the Debtor's equitable interest in receiving a distribution from the Plan and of the Debtor's right to obtain an amended order post-petition which satisfies the requirements of a QDRO. *See In re Long, supra, supra,* 148 B.R. at 907; *Arnold v. Arnold,* 154 Misc.2d 715, 586 N.Y.S.2d 449 (Sup.Ct.1992).

■ Since Connelly's interpretation of NYCPLR § 5205 would effectively prevent the Debtor from taking advantage of the opportunity to preserve the tax exempt status of her interest in the Plan until her own retirement, it contravenes the protection afforded retirement funds under the 1989 amendments to NYCPLR §§ 5205(c) and (d) must therefore be rejected.

■ Connelly also contends that to the extent the exemption applies at all, the funds are exempt only as long as they are held in trust. Connelly asserts that because the funds subject to the Order be-

came immediately payable to the Debtor, they are no longer protected.

This argument is subject to at least two infirmities. First, as of petition date the Debtor had not yet received a distribution from the Plan. As discussed, *supra*, until the Debtor obtains an amended order addressing the objections of the Plan administrator, she actually has no present right to receive a distribution from the Plan. *See In re Long, supra,* 148 B.R. at 907. Thus, there is no basis for this prong of Connelly's argument.

More significantly, under the 1989 amendments to NYCPLR § 5205, *see* Discussion, *supra*, both the principal and income from a qualifying retirement Plan are 100% exempt from application by creditors to the satisfaction of money judgments. Thus, any payment that the Debtor receives pursuant to an amended order will fall within the exemption provided by NYCPLR § 5205(c)(2).

■ Connelly's final contention, that the Order constitutes a transfer of trust funds to a third party non-beneficiary, in whose hands such funds are no longer exempt is also without merit. First, the Debtor is a recognized beneficiary under the Plan. As discussed above, payments made to a former a spouse pursuant to a QDRO represent a recognition of the former spouse's right to receive all or a portion of the benefits payable with respect to the participating spouse's interest under the Plan. *See* ERISA § 1056(d)(3)(B)(i)(I).

Additionally, Connelly's reliance on *In the Matter of the Board of Education of the City of New York v. Treyball,* 86 A.D.2d 639, 446 N.Y.S.2d 417 (2d Dep't), *appeal dismissed,* 56 N.Y.2d 683, 451 N.Y.S.2d 731, 436 N.E.2d 1333, *appeal dismissed,* 56 N.Y.2d 803, 452 N.Y.S.2d 1027, 437 N.E.2d 1162, *appeal dismissed,* 57 N.Y.2d 670, 454 N.Y.S.2d 76, 439 N.E.2d 885, *appeal dismissed,* 57 N.Y.2d 601, 454 N.Y.S.2d 1025, 439 N.E.2d 1244 (1982), is without merit since Connelly concedes in his memorandum that fraud is not an issue in this case. Moreover, the premise upon which *Treyball* relies, that trust funds are, at least in theory, 100% reachable by creditors under appropriate circumstances, has been implicitly overruled by the 1989 amendments to NYCPLR §§ 5205(c) and (d) which generally make a debtor's retirement fund 100% exempt.

Based on the foregoing conclusions, Connelly's objection to the exemption claimed by the Debtor in her interest in her former Husband's NIMO profit sharing Plan account is denied.

IT IS SO ORDERED.