**In re Patricia M. JOHNSTON, Debtor.**

**Patricia M. JOHNSTON, Plaintiff,**

**v.**

**Robert MAYER, Trustee, Defendant.**

**Bankruptcy No. 96–14393 (MVB). CM No. 97–1366.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Feb. 19, 1998.

---

814

**MEMORANDUM OPINION**

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

 In the case at bar we are called upon to determine whether the trustee's objection to the debtor's claimed exemption of $84,-534.00 currently in her former husband's pension plan should be sustained. The parties have stipulated to the fact that the pen-sion plan is an ERISA-qualified plan. The issue is whether the funds become property of the estate upon distribution to the debtor pursuant to a qualified domestic relations order. A hearing was held and after hearing argument from both counsel for the debtor and the trustee, the court took this matter under advisement.

The Court has jurisdiction over the parties and subject matter of this core proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(B). Venue is proper pursuant to 28 U.S.C. § 1409.

The debtor was awarded an interest in her former husband's pension plan pursuant to a property settlement agreement and a quali-fied domestic relations order entered by the Circuit Court of the City of Alexandria on June 6, 1996. The debtor's petition was filed on August 15, 1996, prior to any distribution of funds from the pension plan. The debtor claims that the funds are not property of the estate based on the Supreme Court's holding in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) which held that a debtor may exclude an interest in funds from the bankruptcy estate if the funds are held in an ERISA-qualified plan.

Furthermore, the debtor argues that she is a beneficiary of the plan and is entitled to all of the protections provided to beneficiaries. She asserts that based on *Shumate* and *In re Abbata*, 157 B.R. 201 (Bankr.N.D.N.Y.1993) she is entitled to exempt all of the funds received from her former husband's pension plan because they are being withdrawn from an ERISA-qualified pension plan.

The trustee asserts that the debtor is not entitled to such exclusion because she is not the participant of the plan but only became entitled to the funds pursuant to the qualified domestic relations order. And, he further contends, that as trustee, he stands in the debtor's shoes and is entitled to receive any distribution that she would be entitled to receive. Further, upon presentment to the trustee of the pension plan, a qualified do-mestic relations order breaches the "wall" or anti-alienation provision required in ERISA plans and therefore, the funds are no longer protected under ERISA and *Shumate*, but would become property of the bankruptcy

estate. As such, he asserts, the holding of *Shumate* does not apply and the debtor's entitlement to the funds pursuant to the qualified domestic relations order should be deemed property of the estate.

The trustee urges us to find that the debtor would not be entitled to the funds without the qualified domestic relations order and would therefore not otherwise be entitled to any of the funds under the plan. Further, he argues she is not a beneficiary because the definition of beneficiary in the plan requires the participant, who in this case is the husband, to be either terminated or deceased and the debtor must receive the funds as an heir. From these conclusions, the trustee argues that the debtor is neither a beneficiary nor a participant and therefore has no rights under the plan.

The trustee concedes that if this court finds that the funds become property of the estate, he will nonetheless be bound by the qualified domestic relations order that directs the funds to be rolled-over directly into an IRA or other qualified plan which would likely entitle the debtor to exempt a portion of the funds under the Virginia Code. *See* Va.Code § 34–34.

The holding in *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, is the cornerstone of the issue before us. In *Shumate*, the trustee claimed that the debtor was not entitled to exclude from property of the estate funds held in an ERISA pension plan because the language of section 541(c)(2), specifically "applicable nonbankruptcy law," was intended to mean only state law and not federal law such as the ERISA statute. The Court held that the anti-alienation provision necessary for a pension plan to be ERISA-qualified constituted "applicable nonbankruptcy law" for the purposes of excluding property from a debtor's estate pursuant to 11 U.S.C. § 541(c)(2). *Id.* at 765, 112 S.Ct. at 2250.

A pension plan is ERISA-qualified if it is 1) governed by ERISA and 2) includes an anti-alienation provision that is 3) enforceable under ERISA. *In re Hanes*, 162 B.R. 733,

740 (Bankr.E.D.Va.1994); *see In re Bennett*, 185 B.R. 4, 6 (Bankr.E.D.N.Y.1995). In the case at bar, it is undisputed that the funds at issue are being removed from an ERISA-qualified program.

Here, the trustee, concedes that if the debtor in this case were the husband, the plan participant, the funds would be exempt from the bankruptcy estate pursuant to *Shumate*. However, in this case, the debtor is the wife whose only interest in the funds arose from a qualified domestic relations order, not from participating in the plan or as a beneficiary under the plan.

Pursuant to 29 U.S.C. § 1056(d)(3) the trustee of the pension plan may only distribute funds to an alternate payee if there is a qualified domestic relations order. In order to be a valid qualified domestic relations order, the order must be a domestic relations order that:

> creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and
>
> (II) with respect to which the requirements of subparagraphs (C) and (D)[1] are met, and . . .
>
> (ii) the term "domestic relations order" means any judgment, decree, or order including approval of a property settlement agreement which—
>
> (I) relates to the provision of child support alimony payments or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and
>
> (II) is made pursuant to a State domestic relations law. . . .

29 U.S.C. § 1056(d)(3)(B) (1994). A qualified domestic relations order recognizes the right of an "alternate payee" to receive payment from a qualifying plan. *Id.; In re Abbata*, 157 B.R. 201, 205 (Bankr.N.D.N.Y.1993).

Clearly, the debtor is an alternate payee. The plan at issue does not define alternate

---

**1.** Subparagraphs (C) and (D) relate inter alia to the name and last known mailing addresses of the participant and each alternate payee; the percentage of benefits, number of payments and plan terms, and the order may not change the terms of the plan.

payee other than stating that an alternate payee shall have the same meaning set forth in 26 U.S.C. § 414(p).[2] However, the plan does define a beneficiary as "the person or persons entitled to receive benefits hereunder in lieu of a Participant or Terminated Participant, because of the death of such Participant or Terminated Participant." *Plan Section* 2.6. The plan further distinguishes a beneficiary from an alternate payee receiving funds pursuant to a qualified domestic relations order by creating a specific section in the plan entitled "Special Distributions for Qualified Domestic Relations Orders" which directs the plan trustee to make a distribution pursuant to a qualified domestic relations order to the alternate payee in either a single lump sum or direct rollover distribution.

The research of the parties as well as the independent research of this court indicates that the issue of whether the funds held in an ERISA-qualified plan pending distribution under a qualified domestic relations order become property of the estate has not been addressed in a published opinion. However, the case at bar is substantially similar to *In re Abbata*, 157 B.R. 201 (Bankr.N.D.N.Y. 1993) cited by the debtor's counsel. Although the case did not involve the issue of whether ERISA funds distributed pursuant to a qualified domestic relations become property of the bankruptcy estate it is nevertheless instructive. In that case, the debtor had claimed an interest in her former husband's 401(k) plan. The debtor had listed the full value of the funds as exempt on her Schedule C despite the fact that the funds had not yet been distributed pursuant to the qualified domestic relations order signed prior to the debtor's filing. A creditor objected to the debtor's claimed exemption in the pension funds. The debtor claimed that the funds were exempt because they were pay-

able from a qualifying plan and as such were exempt pursuant to the New York State exemption statute,[3] N.Y.C.P.L.R. § 5205(c)(2).[4] The New York C.P.L.R. § 5205(c)(2) permits a debtor to claim as exempt all property *payable from* a "retirement or other plan established by a corporation which is qualified under section 401 of the United States Internal Revenue Code of 1986...." The plan in *Abbata* was a qualified retirement plan within the meaning of N.Y.C.P.L.R § 5205(c) in that it contained an non-alienation provision required for a 401(k) plan.

The creditor in *Abbata* advanced the same argument as the trustee did in the case at bar, that is, that the qualified domestic relations order constitutes a transfer of trust funds to a third party non-beneficiary and therefore the funds are not exempt. The court recognized that a qualified domestic relations order is a "special type of domestic relations order which recognizes the existence of an 'alternate payee's' right to receive all or a portion of the benefits payable to a participant under a qualifying plan. This exception to the otherwise stringent anti-alienation requirements of both the IRC and ERISA ... was added to better protect the financial security of non-employee spouses after divorce...." *Id.* at 205 (citations omitted). A qualified domestic relations order creates an ownership interest for the non-employee spouse in a portion of the retirement benefits that were earned during the marriage. *Id.* at 205, 206.

The unanswered question remains however, whether the funds become property of the estate and are thereafter able to be claimed exempt from property of the estate pursuant to state law or 11 U.S.C. § 522. The court in *Abbata* rejected the creditor's argument that the debtor was not entitled to the exemption and found that the debtor was entitled to

---

**2.** Section 414(p) states that " 'alternate payee' " means "any spouse, former spouse child or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." 26 U.S.C. § 414(p).

**3.** Both New York and Virginia, have "opted out" of the federal exemption scheme pursuant to 11

U.S.C. § 522(b)(1) and each state has enacted its own exemption statute.

**4.** Note that the exemption was claimed under state law and was not based on the holding of *Patterson v. Shumate* therefore, the issue of whether the funds became property of the estate under applicable non-bankruptcy law was not addressed.

exempt the funds under state law. *Id.* at 206. We can only assume that the court did not address the then recent holding of *Shumate* because the court determined, without expressly stating, that the funds were property of the estate under 11 U.S.C. § 541 but that debtor was nonetheless entitled to exempt the full amount pursuant to state law.

This conclusion is further supported by a case not cited by either party, *In re Cesare*, 170 B.R. 37 (Bankr.D.Conn.1994). In *Cesare*, the debtor held an IRA that had been funded by a lump sum payment from a terminated pension plan. The trustee objected to the debtor's claimed exemption of the funds. The parties stipulated that "if the pension plan had been in existence at the time of filing, the debtor would have been able to claim it as exempt." *Id.* at 38 (internal quotations omitted). The debtor claimed that although the funds would not be exempt under 11 U.S.C. § 522(d)(10)(E),[5] they would nonetheless be able to be claimed as exempt based on the nature and source of the funds. *Id.* at 38. The court rejected this argument and held that once the funds are removed from the plan, they can no longer be claimed as exempt pursuant to 11 U.S.C. § 522(b)(2)(A). *Cesare*, 170 B.R. at 40; *see In re Caslavka*, 179 B.R. 141, 143 (Bankr. N.D.Iowa 1995) (holding "once a debtor gains unrestricted access to funds in an ERISA-qualified plan, such funds do not qualify as a spendthrift trust under § 541(c)(2) and thus are not excludable from the estate") (citing *In re Reid*, 139 B.R. 19, 21 (Bankr.S.D.Cal. 1992)).

This aspect is also true of the funds at issue in the case at bar. We acknowledge that the funds have not been disbursed from the pension plan, however, once they are, they will lose their exempt nature and become property of the estate.

This conclusion is also consistent with *Shumate*. The Supreme Court simply held that the funds in an ERISA plan are not property of the estate pursuant to 11 U.S.C. § 541(c)(2). In *Abbata* and *Cesare*, as in the case sub judice, the funds are not in an ERISA plan, but are payable from an

ERISA plan to the debtor. Thus, the holding in *Shumate* does not apply to funds disbursed from an ERISA plan to a debtor who is not a plan participant or a beneficiary.

We therefore conclude that the funds are not protected by applicable non-bankruptcy law because the debtor is not a plan participant or a beneficiary. Instead, she is simply an alternate payee entitled to the funds pursuant to the qualified domestic relations order. Accordingly, upon disbursement of the funds from the pension plan, they become property of the estate to be rolled-over into an IRA or other qualifying plan in accordance with the qualified domestic relations order. We then turn to a determination as to whether the funds are exempt pursuant to state law.

The debtor is claiming all of the funds as exempt however, pursuant to Virginia Code section 34–34 only a portion of the funds shall be exempt because the funds will not be held in an ERISA-qualified plan but in an IRA. It has been held that the conclusion reached in *Shumate* applies only to ERISA plans and not to individual retirement accounts or to funds transferred from ERISA plans. *Caslavka*, 179 B.R. at 143; *In re Hanes*, 162 B.R. 733, 741 (Bankr.E.D.Va. 1994) (Bostetter, C.J.) All other individual retirement accounts are subject to the limits imposed by Virginia Code § 34–34. *In re Heidel*, 215 B.R. 814 (Bankr.E.D.Va.1997) (Bostetter, C.J.); *In re Cathcart*, 203 B.R. 599, 602 (Bankr.E.D.Va.1996) (Mitchell, J.).

Section 34–34(B) provides that the interest of an individual under a retirement plan shall be exempt from creditor process to the extent provided under this section. The exemption provided by this section shall be available whether such individual has an interest in the retirement plan as a participant, beneficiary, contingent annuitant, alternate payee or otherwise. Va.Code § 34–34(B). An alternate payee pursuant to the Virginia Code is provided the same meaning as that under ERISA which is "any spouse, former spouse of a participant who is recognized by a domestic relations order as having a right

---

5. Connecticut has not opted out of the Federal exemption scheme and therefore, 11 U.S.C. § 522 governs the property that a debtor in Connecticut may claim as exempt.

818

to receive all, or a portion of, the benefits payable under a plan with respect to such participant." 29 U.S.C. § 1056(d)(3)(K) (Supp.1997). In the case at bar, the debtor is an alternate payee by virtue of the definition in ERISA and the qualified domestic relations order. Accordingly, section 34–34 and corresponding case law applies to determine the extent to which the funds will be exempt.

Virginia Code § 34–34 expressly provides that funds payable to an alternate payee from a retirement plan as defined in the statute,[6] are exempt from creditor process to the extent provided in subsection (C).

█ She is entitled to receive the funds pursuant to the qualified domestic relations order but when the funds are transferred, pursuant to the order the funds must be rolled over directly into an IRA or other qualifying plan. This, as the trustee notes, should render the funds subject to exemption under Virginia Code § 34–34. Additionally, it appears that the debtor sufficiently identified the funds on her Schedule C within the statutory time frame to permit the exemption to be claimed. *See In re Heidel,* 215 B.R. at 818.

## CONCLUSION

For the foregoing reasons, the objection of the trustee to the debtor's claimed exemption is sustained.

---

**6.** Section 34–34 defines a retirement plan as:
a plan, account, or arrangement that is intended to satisfy the requirements of United States Internal Revenue Code §§ 401, 403(a), 403(b), 408, 409 (as in effect prior to repeal by United States P.L. 98–369), or § 457. Whether a plan, account, or arrangement is intended to satisfy the requirements of one of the foregoing provisions shall be determined based on all of the relevant facts and circumstances including, but not limited to, the issuance of a favorable determination letter by the United States Internal Revenue Service, reports or returns filed with Untied States or state agencies, and communications from the plan sponsor to participants.
Va.Code § 34–34(A).