**In re Kathleen B. SEDDON, Debtor.**

**No. 00–31462.**

United States Bankruptcy Court,
W.D. North Carolina,
Charlotte Division.

Nov. 14, 2000.

A. Burton Shuford, Shuford, Hunter & Brown, P.A., Charlotte, North Carolina, for trustee.

Sandra C. Kullman, Kullman & Associates, P.C., Charlotte, North Carolina, for debtor.

### ORDER DENYING TRUSTEE'S MOTION TURNOVER

J. CRAIG WHITLEY, Bankruptcy Judge.

This matter came on for hearing before the undersigned on October 12, 2000 upon the Motion for Order Requiring Debtor to Turnover Property of the Estate, filed by Trustee A. Burton Shuford. Based on that hearing and a review of the record in this matter, the Court makes the following:

### FINDINGS OF FACT

The debtor, Kathleen Seddon, filed for relief under Chapter 7 of the United States Bankruptcy Code on July 7, 2000. Prior to that date she was involved in a divorce proceeding and equitable distribution action with her ex-spouse, Alfred Seddon. Mr. Seddon was a federal employee. When the parties resolved the equitable distribution case, their consent judgment provided that beginning January 1, 1998 the debtor would receive a portion of Mr. Seddon's retirement benefits payable under the Civil Service Retirement System ("CSRS"). Pursuant to the settlement, the parties also filed a "Consent Order Acceptable for Processing Under the Civil Service Retirement System." This order calculated the percentage of Mr. Seddon's monthly annuity payments that the debtor was eligible to receive and required CSRS to pay that portion directly to the debtor. As of the petition date, the debtor received $1,278.18 per month in CSRS benefit payments.

The trustee's turnover motion alleges that the debtor's interest in Mr. Seddon's pension is an asset of her bankruptcy estate under § 541 of the Bankruptcy Code, and that he is entitled to take possession of the funds as they come due. The debtor maintains that her monthly payments are excluded from the bankruptcy estate under § 541(c)(2) of the Code, in that they are subject to a federal anti-alienation statute applicable to CSRS benefits. Therefore, the questions before the Court are (1) whether CSRS benefits are excluded from property of the estate, and (2) if so, does that exclusion apply to benefits payable not to the employee, but instead to an ex-spouse pursuant to a marital property settlement?

## CONCLUSIONS OF LAW

The Court answers both questions in the affirmative. The CSRS benefits are not property of the bankruptcy estate in this case.

### A. CSRS Benefits are Excluded from the Bankruptcy Estate.

When a debtor files for Chapter 7 bankruptcy protection, most of his assets on the petition date become property of the estate. 11 U.S.C. § 541(a). However, the Bankruptcy Code contains a number of exceptions to this general rule. 11 U.S.C. § 541(b)–(d). Section 541(c)(2), for example, states that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

In *Patterson v. Shumate*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court held that a transfer restriction in a pension plan required under the Employee Retirement Income Security Act ("ERISA") met the criteria of § 541(c)(2). As a result, the debtor in that case could exclude his interest in an ERISA-qualified plan from bankruptcy estate.

The Supreme Court did not limit its interpretation of § 541(c)(2) in *Shumate* to ERISA plan anti-alienation requirements. *Id.* at 759, 112 S.Ct. at 2247 ("the provision encompasses any relevant nonbankruptcy law, including federal law such as ERISA") (emphasis added). Subsequent courts have held that anti-alienation restrictions in other federal or state laws will also satisfy § 541(c)(2). *See In re Meehan*, 102 F.3d 1209 (11th Cir.1997) (excluding IRA from bankruptcy estate based on transfer restriction imposed by state law).

The Eighth Circuit Court of Appeals has specifically held that CSRS benefits like those in the case at bar are excluded from estate property in the bankruptcy of a plan participant. *Whetzal v. Alderson (In re Alderson)*, 32 F.3d 1302 (8th Cir.1994). In *Whetzal*, the court reviewed the anti-alienation clause contained in the Civil Service Retirement Act ("the Act"), which governs CSRS benefits. That clause states:

> The money mentioned by this subchapter is not assignable, either in law or equity, except under the provisions of subsections (h) and (j) of section 8345 of this title, or subject to execution, levy, attachment, garnishment, or other legal process, except as otherwise may be provided by Federal laws.

5 U.S.C. § 8346(a). Based on the similarity of the transfer restrictions in the Act and in ERISA, the Eighth Circuit concluded that CSRS benefits were also excluded from the employee's bankruptcy estate. This was so even though a retiree could accept his CSRS benefits as a lump sum rather than as a periodic payment.[1]

---

1. The trustee in *Whetzal* argued that the clause "except as otherwise may be provided by Federal laws" in § 8346(a) included the lump-sum allowance contained in § 8342, even if the anti-alienation provision applied to periodic payments. The Eighth Circuit rejected this argument on the grounds that the anti-alienation language broadly refers to any "money mentioned by this subchapter," rather than using narrower terms such as "annuity" or "periodic payments." *Id.* at 1304.

The undersigned agrees with the Eight Circuit's conclusion. CSRS benefits are subject to an express restriction on transfer and should be excluded from the estate under *Shumate*. The decision to exclude the assets from the estate is also supported by a longstanding policy rationale, which underscores the anti-alienation provisions in ERISA, the Act, and other statutes regulating employee benefits. Congress and the courts have consistently made it a policy to protect retirement benefits from the reach of creditors. *See Patterson v. Shumate*, 504 U.S. 753, 764–65, 112 S.Ct. 2242, 2250, 119 L.Ed.2d 519 (1992) (citing *Nachman Corp. v. Pension Benefit Guaranty Corporation*, 446 U.S. 359, 375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980)). The *Whetzal* court incorporated this policy into its analysis of the CSRS transfer restriction: "Although *Shumate* was an ERISA case, the same basic concern for pension benefits applies to federal employees as well as those in the private sector." *Whetzal v. Alderson (In re Alderson)*, 32 F.3d 1302, 1304 (8th Cir.1994).

Therefore, based on the foregoing authorities, the Court concludes that § 8346(a) of the Act is a restriction on the transfer of a beneficial interest in a trust, which generally serves to exclude CSRS benefits from a participant's bankruptcy estate under 11 U.S.C. § 541(c)(2).

### B. The CSRS Exclusion also Applies to Interests Obtained Through Equitable Distribution.

The debtor in this case obtained an interest in her ex-husband's CSRS pension through equitable distribution orders in state court. She may therefore be considered an alternate payee of the employee-participant's benefits. This Court has located no authorities stating whether the ex-spouse of an employee-participant may exempt CSRS benefits from her bankruptcy case under § 541(c)(2). However, prior opinions have addressed a debtor's right to retirement benefits in other contexts, and these decisions shed light on this issue.

For example, in *In re Abbata*, 157 B.R. 201 (Bankr.N.D.N.Y.1993), the debtor attempted to claim an exemption in a portion of her ex-husband's pension plan. She obtained her interest through a Qualified Domestic Relations Order ("QDRO"), which was executed as part of a prepetition equitable distribution settlement. The debtor claimed the funds under a New York exemption statute applicable to retirement plans qualified under Internal Revenue Code ("IRC") § 401(k).[2] A creditor challenged the exemption on grounds similar to those raised by the trustee in the present case. Essentially, the creditor argued that the exemption was intended to benefit employee-plan participants only, and that the transfer of an interest to the debtor via a QDRO removed that interest from the protective confines of the statute.

The *Abbata* court disagreed and upheld the exemption. The court found that the creditor misconstrued the debtor's interest in the plan as a derivative right to receive payments. Instead, the QDRO gave the debtor a unique proprietary interest in the plan itself. The court noted that both the IRC and ERISA contain express exceptions to their strict anti-alienability clauses for domestic relations orders. These exceptions are specifically intended to protect the financial security of non-employee spouses after divorce from an employee participating in a qualified pension plan. *Id.* at 205. Thus, these statutes recognize a non-employee spouse's separate "ownership interest" in a portion of the retirement funds earned during marriage. *Id.* In view of her unique ownership interest in the benefits, the *Abbata* court concluded that the debtor was also entitled to the protection of the exemption statute.

---

**2.** New York CPLR § 5205(c)(2) permitted a debtor to claim as exempt all property payable from a "retirement or other plan established by a corporation which is qualified under section 401 of the United States Internal Revenue Code of 1986." The plan in *Abbata* was a qualified plan within the meaning of the New York statute because it contained a non-alienation provision required under IRC § 401(k).

In the case at bar, the anti-assignment clause in the Civil Service Retirement Act contains an exception for payments made to an alternate payee under a state court domestic order. That section states:

> Payments made under this subchapter which would otherwise be made to an employee, Member, or annuitant based on service of that individual shall be paid (in whole or in part) by the Office to another person if and to the extent expressly provided for in the terms of—
>
> (A) any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation;

5 U.S.C. § 8345(j)(1). Like ERISA and the IRC, this provision carves out a narrow exception to the Act's anti-alienability restriction.

And as noted in *Abbata*, the exception constitutes a recognition of a non-employee spouse's ownership interest in retirement benefits earned during the marriage. *See also Walston v. Walston (In re Walston)*, 190 B.R. 66 (E.D.N.C.1995) (discussing non-employee spouse's proprietary interest in debtor's military pension as a co-owner of marital property) Because the debtor possesses an independent ownership interest in the CSRS benefits, she is entitled to exclude this asset from her bankruptcy estate just as if she was the employee-participant. Furthermore, while the debtor's rights are given effect through equitable distribution orders, the funds otherwise remain subject to the Act's anti-alienability restriction. As such, they are still properly excluded from her bankruptcy estate under the reasoning of *Shumate* and *Whetzal, supra.*

Finally, the Court is aware of prior opinions stating that the exclusion recognized by *Shumate* and its progeny does not apply to funds once they are disbursed from a benefits plan. *See Johnston v. Mayer,* 218 B.R. 813, 817 (Bankr.E.D.Va.1998). However, in *United States v. Smith,* 47 F.3d 681, 683 (4th Cir.1995), the Fourth Circuit drew a distinction between ERISA funds withdrawn from a benefit plan prior to retirement, and funds paid as regular income after retirement. When paid as retirement income, the court held that the statute's transfer restriction still applied to the funds after disbursement. In *Smith,* the restrictions even prevented the government from seizing regularly paid ERISA benefits for purposes of criminal restitution. *Id.* (citing *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979)).

The funds received by the debtor in this matter consist entirely of post-retirement income. No early withdrawals were taken or paid to the debtor. Therefore, all of the funds that have been paid or that will be paid to the debtor are subject to the anti-alienation provisions of the Act.

## THEREFORE, IT IS ORDERED:

The Trustee's Motion for Order Requiring Debtor to Turnover Property of the Estate should be and hereby is DENIED.