# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2045

_____

| | | |
|---|---|---|
| In re: Ronald J. Nelson, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| _____ | * | |
| | * | |
| Ronald J. Nelson, | * | |
| | * | Appeal from the United States |
| Appellee, | * | Bankruptcy Appellate Panel |
| | * | for the Eighth Circuit. |
| v. | * | |
| | * | |
| James E. Ramette; Richard Schieffer, | * | |
| and the law firm of Anderson, Dove, | * | |
| Fretland & Van Valkenburg, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  December 11, 2002

Filed:  March 7, 2003

_____

Before McMILLIAN, JOHN R. GIBSON, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Richard Schieffer and his law firm appeal the Bankruptcy Appellate Panel's (BAP's) determination that a debtor's interest in an ERISA-qualified retirement plan should be excluded from the debtor's bankruptcy estate when the interest derives from

a qualified domestic relations order (QDRO) rather than directly from the plan. See Nelson v. Ramette (In re Nelson), 274 B.R. 789, 798 (B.A.P. 8th Cir. 2002). We affirm.

I

Ronald Nelson, a self-employed carpenter/contractor, and his wife, Denise, a cabin attendant for Northwest Airlines, obtained a divorce on September 28, 2000. The divorce decree awarded Ronald $71,089 from Denise's retirement plan. The divorce decree provided the award would be made pursuant to a QDRO. On November 17, 2000, the divorce court issued a domestic relations order (DRO) to effect the distribution from Northwest's retirement plan.

On February 26, 2001, while the retirement plan was determining whether the DRO qualified as a QDRO, and before it had distributed any funds to Ronald, he filed for bankruptcy. Ronald claimed in the bankruptcy proceeding that his pending distribution from the retirement plan should be excluded from his bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2)[1] because it was subject to ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1).[2] Because Ronald still owed attorney fees to his divorce attorney, Richard Schieffer, Schieffer objected to Ronald's claim arguing the pending distribution should be included in the bankruptcy estate and distributed to creditors.

_____

[1]"A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).

[2]"Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1).

The bankruptcy court held that the pending distribution was property of the bankruptcy estate because the interest emanated from a QDRO rather than directly from the plan itself. The bankruptcy court relied upon one of its own decisions, In re Yeager, No. BKY 97-48484, 1998 WL 356888, at *8 (Bankr. D. Minn. June 26, 1998), and two other bankruptcy court decisions, In re Hageman, 260 B.R. 852, 857 (Bankr. S.D. Ohio 2001), and Johnston v. Mayer (In re Johnston), 218 B.R. 813, 817 (Bankr. E.D. Va. 1998).

Ronald appealed to the BAP. The BAP reversed, holding the plain language of ERISA grants beneficiary status to alternate payees under a QDRO, and therefore entitles those persons to the protection of ERISA's anti-alienation provision. Nelson, 274 B.R. at 798. The BAP relied upon two Supreme Court decisions, Patterson v. Shumate, 504 U.S. 753, 760 (1992) (holding that a debtor's interest in an ERISA-qualified plan was excluded from bankruptcy estate pursuant to ERISA's anti-alienation provision and 11 U.S.C. § 541(c)(2)), and Boggs v. Boggs, 520 U.S. 833, 846-47 (1997) (generally recognizing that QDROs confer beneficiary status upon certain nonparticipants and give those persons the same protection under ERISA as plan participants).

Schieffer timely appealed the BAP's decision to this court. Schieffer contends the Boggs decision is not controlling, and urges us to adopt the reasoning of the Hageman and Johnston decisions.

II

As the second reviewing court, we apply the same standards of review as the BAP. In re Clark, 223 F.3d 859, 862 (8th Cir. 2000). The issue is whether property obtained from an ERISA-qualified retirement plan pursuant to a QDRO should be included in a bankruptcy estate, which is a question of law reviewed de novo. Nelson, 274 B.R. at 791.

Section 541(c)(2) of the Bankruptcy Code "entitles a debtor to exclude from property of the [bankruptcy] estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." Patterson, 504 U.S. at 758. ERISA's anti-alienation provision "constitutes an enforceable transfer restriction for purposes of § 541(c)(2)'s exclusion of property from the bankruptcy estate." Id. at 760.

The relevant moment for determining whether property constitutes the bankruptcy estate is "as of the commencement of the case." 11 U.S.C. § 541(a)(1). Ronald commenced his bankruptcy on February 26, 2001. On that date, the lump-sum distribution owed him from Northwest's retirement plan had not yet been distributed, and was therefore still held in trust by an ERISA plan. It logically follows that funds still held in trust are subject to ERISA's anti-alienation provision, and therefore excludable from a bankruptcy estate under § 541(c)(2).

We reject Schieffer's contention that ERISA's anti-alienation provision does not apply because Ronald obtained his interest through a QDRO rather than directly from the plan. Ronald, as an alternate payee under a QDRO, had beneficiary status under the plain language of ERISA. See 29 U.S.C. §§ 1056(d)(3)(J)[3] & (K).[4] Ronald was a beneficiary of the retirement plan at the time he filed bankruptcy, because the plan was still in the process of determining whether the DRO qualified as a QDRO. A person awarded a lump-sum distribution from an ERISA plan pursuant to a divorce decree has a direct interest in plan funds while the plan reviews the DRO to determine

[3]29 U.S.C. § 1056(d)(3)(J) provides "[a] person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of this chapter a beneficiary under the plan."

[4]29 U.S.C. § 1056(d)(3)(K) provides "[t]he term 'alternate payee' means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant."

whether it constitutes a QDRO. See In Re Gendreau, 122 F.3d 815, 819 (9th Cir. 1997) ("The QDRO provisions of ERISA do not suggest that [an alternate payee] has *no* interest in the plans until she obtains a QDRO, they merely prevent her from enforcing her interest until the QDRO is obtained.") (emphasis in original). Furthermore, § 541(c)(2) specifically refers to the "beneficial interest of the debtor in a trust" and therefore applies both to a beneficiary's interest in an ERISA plan as well as a plan participant's interest in the plan.

In Boggs, the Supreme Court explained that the "principal object of [ERISA] is to protect plan participants and beneficiaries," 520 U.S. at 845, and noted that "[i]n creating the QDRO mechanism Congress was careful to provide that the alternate payee . . . is to be considered a plan beneficiary." Id. at 847. The Court also said the "axis around which ERISA's protections revolve is the concepts of participant and beneficiary." Id. at 854. Thus, the Court essentially recognized that Congress, via the QDRO provisions, intended that all persons conferred beneficiary status via a QDRO be given the same protections ERISA affords to plan participants. Those protections include ERISA's anti-alienation provisions. Therefore, a person who acquires an interest in an ERISA plan via a QDRO can exclude that interest from a bankruptcy estate in the same way that the plan participant herself could have excluded it.

Schieffer urges us to adopt the reasoning in Hageman and Johnston, two bankruptcy court decisions which held that funds payable to an alternate payee under a QDRO should be included within the bankruptcy estate. We decline, as have other courts since our BAP issued its decision. See In re Lalchandani, 279 B.R. 880, 886 (B.A.P. 1st Cir. 2002); In re Hthiy, 283 B.R. 447, 451 (Bankr. E.D. Mich. 2002). Both Hageman and Johnston failed to address the plain language of ERISA, which provides that an alternate payee under a QDRO is considered a beneficiary of the plan. The Johnston court actually concluded just the opposite by incorrectly focusing upon the plan language rather than ERISA. See Johnston, 218 B.R. at 817.

-5-

Schieffer also relies upon Yaeger, which held ERISA's anti-alienation provision only applied to a plan participant's interest in an ERISA plan, but not to a nonparticipating beneficiary's interest in an ERISA plan. 1998 WL 356888 at *8-9. We do not find Yaeger persuasive. Yaeger relied heavily upon Estate of Altobelli v. Int'l Bus. Mach. Corp., 77 F.3d 78 (4th Cir. 1996) and Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown, 897 F.2d 275 (7th Cir. 1989). Both those cases are distinguishable, because they involved *waivers* of a beneficiary's interest in a pension plan rather than an assignment of an interest in contravention of ERISA's anti-alienation provision. Altobelli, 77 F.3d at 80; Fox Valley, 897 F.2d at 279-80. Furthermore, both Altobelli and Fox Valley involved the competing interests of the plan participant and a divorced beneficiary, where the beneficiary waived her interest in plan funds in favor of the pensioner himself. The Fourth Circuit recognized it would be inconsistent with the very purpose of the anti-alienation provision (that is, to protect a pensioner's own interest in plan assets) to bar the waiver of a beneficiary's competing interest when the waiver operated to benefit the pensioner. Altobelli, 77 F.3d at 81. This case involves neither the waiver of a beneficiary's interest, nor a situation where a beneficiary's interest competes with the plan participant's own interest.

Finally, Schieffer contends ERISA's anti-alienation provision does not apply to an interest acquired through a QDRO because that type of transfer is one of the two exceptions to the anti-alienation provision. See 29 U.S.C. § 1056(d)(3)(A) ("[The anti-alienation provision] shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that [it] shall not apply if the order is determined to be a qualified domestic relations order."). Schieffer reads this provision out of context. The transfer of funds from Denise's retirement plan to Ronald was accomplished pursuant to a QDRO, and therefore not subject to ERISA's anti-alienation provision. That is not the transfer at issue. The relevant transfer is that between Ronald and his creditors via the bankruptcy estate. That transfer, if allowed to take place, would not

be accomplished pursuant to a QDRO, and is therefore subject to ERISA's anti-alienation provision.

We affirm the BAP's well-reasoned decision.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.