**In re Michael/Jane HARTMAN, Debtors.**

**National City Bank, Plaintiff,**

v.

**Michael/Jane Hartman, Defendants.**

**No. 05–3217.**

United States Bankruptcy Court,
N.D. Ohio.

Dec. 21, 2005.

John A. Borell, Jr., Vaughn A. Hoblet, Toledo, OH, for Debtors.

## MEMORANDUM OPINION
## AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This matter is before the Court after a hearing held concerning whether to extend this Court's injunction dated December 6, 2005, restraining the Defendant, Jane Hartman, from utilizing those funds she holds in an Individual Retirement Account. Said Motion for an injunction/restraining Order was brought by the Plaintiff, National City Bank. At this Hearing, it was agreed that resolution of this matter hinged on whether Ms. Hartman was entitled to claim the funds held in her retirement account as exempt. After considering the arguments of counsel, and after having had the opportunity to review the applicable law, the Court finds that such funds are exempt, and thus this Court's restraining order will be terminated.

## BACKGROUND

Prior to filing her petition in bankruptcy, the Defendant, Ms. Hartman, held funds of approximately $700,000.00 in an IRA. Although substantial disbursements have since been made therefrom, Ms. Hartman claims the remainder of the funds, having a value now of less than $300,000.00, exempt pursuant to O.R.C. § 2329.66(A)(10)(c). (Doc. No. 27). The relevant part of this section provides:

(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:

(c) Except for any portion of the assets that were deposited for the purpose of evading the payment of any

debt ..., the person's right in the assets held in, or to receive any payment under, any individual retirement account, individual retirement annuity, "Roth IRA,"... that provides benefits by reason of illness, disability, death, or age, to the extent that the assets, payments, or benefits described in division (A)(10)(c) of this section are attributable to any of the following:

(iii) Contributions of the person that are within the applicable limits on rollover contributions under subsections 219, 402(c), 403(a)(4), 403(b)(8), 408(b), 408(d)(3), 408A(c)(3)(B), 408A(d)(3), and 530(d)(5) of the "Internal Revenue Code of 1986," 100 Stat.2085, 26 U.S.C.A. 1, as amended.

National City Bank does not dispute Ms. Hartman's right to claim the funds she holds in her IRA exempt to the extent that such funds were permissible "rollover contributions" as defined under subparagraph (iii). But it is National City's position that the majority of the funds held in her IRA are improperly claimed as exempt under this subparagraph because the source of such funds was from a divorce proceeding, specifically a QDRO (Qualified Domestic Relations Order). In the words of National City:

The majority of the IRA funds were contributed through a QDRO of which Jane Hartman was the alternate payee. These funds were derived from Jane Hartman's former spouse's employment— it was his plan. Stated another way, the funds were not contributed by Jane Hartman as a plan participant; rather, according to Merrill Lynch, Jane Hartman did not make any direct plan contributions whatsoever. Notwithstanding that a small portion of the IRA funds might have been derived by Jane

Hartman herself or that Jane Hartman's name might be listed on the account, it remains that other of the funds were a product of the QDRO and Jane Hartman's divorce.

(Doc. No. 39).

As support for the position that funds transferred to an IRA through a QDRO cannot be held as exempt under O.R.C. § 2329.66(A)(10)(c), National City cites to the case of *In re Hageman*, 260 B.R. 852, (Bankr.S.D.Ohio 2001), and the following language:

> The Debtor's attempts to exclude the $60,000.00 from the estate property based upon *Patterson v. Shumate* must fail because her property interest does not emanate from the retirement plan itself, but from the QDRO. *In re Johnston*, 218 B.R. 813, 817 (Bankr.E.D.Va. 1998). The funds in the plan were derived from her former spouse's employment, and it was his plan.
>
> . . .
>
> the alternative efforts of the Debtor to exempt the proceeds as a pension plan and/or annuity (O.R.C. § 2329.66(A)(10)(b)) or as an individual retirement account (O.R.C. § 2329.66(A)(10)(c)). First, these arguments suffer from the same faulty premise advanced to exclude the proceeds, i.e., that they emanate from the retirement plan. Instead, we reiterate that they are derived from the QDRO, and the plan participant is not before this Court.
>
> Second, this Court has carefully reviewed the two Ohio retirement-related exemption statutes at issue and determined that they are drafted in such a manner as to protect only the plan participant, and not a former spouse entitled to payment based upon a QDRO. The Ohio exemption provisions, by their express language, firmly tie their pro-

tections to the plan participant who made the allowed contributions and who is eligible under the plan to receive benefits, as opposed to an alternate payee entitled to payment pursuant to a QDRO.

Ms. Hartman, however, counters, asserting both a procedural and substantive argument. First, procedurally, Ms. Hartman asserts City Bank's objection to her exemption is untimely, citing *Taylor v. Freeland & Kronz*, which held that if a party does not timely object to a claimed objection, the property is exempt even if there is no basis for the claiming of that exemption. 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). Substantively, Ms. Hartman maintains that National City's argument concerning the rollover of funds to her IRA from a QDRO is immaterial, and that this salient fact remains: she made the contributions, thus entitling her to exempt such funds in accordance with O.R.C. § 2329.66(A)(10)(c). (Doc. No. 36).

## DISCUSSION

■ The Plaintiff in this matter seeks a preliminary injunction "prohibiting Defendants from spending, transferring or otherwise dissipating the funds held" in Ms. Hartman's retirement account maintained with Merrill Lynch. (Doc. No. 26). The entering of a preliminary injunction is governed by Rule 65 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7065. The function of injunctive relief is to afford preventive relief, not to redress alleged wrongs that have been committed already. *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975). In this way, primary considerations in determining whether to enter a preliminary injunction under Rule 65 concern whether, (1) the plaintiff has a strong likelihood of succeeding on the merits, and (2) whether

the plaintiff will suffer irreparable injury absent the injunction. *Gonzales v. National Bd. of Med. Examiners,* 225 F.3d 620, 625 (6th Cir.2000).

 In this matter, the potential merits of the Plaintiff's complaint, which is one to determine dischargeability and to deny discharge, were not discussed. But as to harm, it is the Plaintiff's position that the Debtor, Ms. Hartman, has and continues to dissipate an IRA account which, if it is eventually successful on its Complaint, it could utilize to satisfy its claim. But as now set forth, a straightforward, but albeit intricate reading of the applicable statutes show that the Plaintiff has no right to the funds held by Ms. Hartman in her IRA account. Thus, no harm will befall the Plaintiff if an injunction is not issued with respect to the Plaintiff's IRA account, making the continuation of the injunction previously entered in this case inappropriate.

Technically speaking, the acronym IRA, short for Individual Retirement Account, is applicable to any account used for that particular purpose. However, under its common usage, what is referred to as an IRA account centers on a single characteristic: it is afforded certain advantages under the Federal Income Tax Code, such as deductibility and deferred taxation. Although not applicable to certain types of retirement accounts,—in particular, those subject to a restriction on the transfer of its beneficial interest [1]—as a general rule a debtor's interest in an IRA account will become property of the estate. 11 U.S.C. § 541(a).

Notwithstanding, in many instances property held in an IRA account, although included in the debtor's estate, will be exempt. The Supreme Court has defined an exemption as a property "interest with-

drawn from the [bankruptcy] estate (and hence from the creditors) for the benefit of the debtor." *Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). For purposes of this controversy, an important aspect of an allowable exemption in bankruptcy is that, subject to some limited exceptions, such property is "not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case[.]" 11 U.S.C. § 522(c). Ergo, to the extent that those funds held in Ms. Hartman's IRA are exempt, the Plaintiff may not look to such funds as a source to satisfy its claim.

For those debtors domiciled in Ohio, such as the Debtors in this case, their entitlement to claim an exemption in bankruptcy is determined in accordance with Ohio law. Under § 2329.66(A)(10)(c), Ohio law allows for IRA's to be held by a debtor as exempt, subject to certain restrictions. Following the common usage of the term IRA, these restrictions include whether the value of those transfers to the account fall within those "applicable limits" allowed by the Federal Income Tax Code. To this end, is subparagraph (iii) of O.R.C. § 2329.66(A)(10)(c) which addresses said "applicable limits" for "rollover contributions."

In subparagraph (iii) of § 2329.66(A)(10)(c), a rollover contribution will fall within the provision's "applicable limits," thereby not eliminating it from being an allowed exemption, so long as it also meets the "applicable limits" imposed by any of these sections of the Tax Code: 219, 402(c), 403(a)(4), 403(b)(8), 408(b), 408(d)(3), 408A(c)(3)(B), 408A(d)(3), and 530(d)(5). Relevant in this matter, is the second in this string of statutes,— § 402(c) of the Tax Code—which in pertinent part provides:

---

**1.** 11 U.S.C. § 541(c)(2).

(c) Rules applicable to rollovers from exempt trusts.-

(1) Exclusion from income. If-

(A) any portion of the balance to the credit of an *employee* in a qualified trust is paid to the employee in an eligible rollover distribution,

(B) the distributee transfers any portion of the property received in such distribution to an eligible retirement plan, and

(C) in the case of a distribution of property other than money, the amount so transferred consists of the property distributed,

then such distribution (to the extent so transferred) shall not be includible in gross income for the taxable year in which paid.

(emphasis added). Although § 402(c) mentions nothing of a QDRO, which is at the center of this controversy, paragraph (e) of this same section does, and specifically references back to paragraph (c), stating:

(B) Rollovers.—If any amount is paid or distributed to an alternate payee who is the spouse or former spouse of the participant by reason of any qualified domestic relations order (within the meaning of section 414(p)), *subsection (c) shall apply to such distribution in the same manner as if such alternate payee were the employee.*

(emphasis added).

 In interpreting these statutes, Ohio law requires that effect be given to each and every word. *Shover v. Cordis Corp.,* 61 Ohio St.3d 213, 218, 574 N.E.2d 457, 461 (1991). Words and their phrases are then to be read in context and construed according to common usage. *Ohio Bus Sales, Inc. v. Toledo Bd. of Edn.,* 82 Ohio App.3d 1, 610 N.E.2d 1164 (1992); O.R.C. § 1.42. And when these rules of construction are now set into motion, the Court is presented with what are three levels of statutory reference: (1) as a condition to exempting an IRA, § 2329.66(A)(10)(c)(iii) requires that any of the account value attributable to rollover contributions fall within the applicable limits of the Tax Code, such as § 402(c); (2) § 402(c) allows employees to exclude from their taxable income amounts received under a qualified, employer-sponsored retirement plan if the amounts received are then rolled over into qualified IRA; and (3) for purposes of determining who qualifies as an employee under § 402(c), § 402(e) holds that it will include a spouse who receives retirement funds under a QDRO.

 Where, as above, a statute refers to another, it is the rule that the statute referenced becomes embodied in the adopting statute, and that the two are to be read as consistent and harmonious with the other. *Wooster Republican Printing Co. v. Wooster,* 56 Ohio St.2d 126, 132, 10 O.O.3d 312, 315, 383 N.E.2d 124, 128 (1978) (it is a rule of statutory interpretation that statutes be construed together and the Revised Code be read as an interrelated body of law); *Suez Co. v. Young,* 118 Ohio App. 415, 25 O.O.2d 315, 195 N.E.2d 117 (1963) (a court is to construe statutes which explicitly refer to each other so that they are consistent and harmonious with a common policy and give effect to the legislative intent). Similarly, statutes which relate to the same subject are to be read in *pari materia. Shover,* 61 Ohio St.3d at 218, 574 N.E.2d at 461. Thus, under any straightforward interpretation of § 2329.66(A)(10)(c), and its interplay with paragraphs (c) and (e) of § 402 of the Internal Revenue Code, leads to but just one result: under Ohio law, (and so long as the account is otherwise qualified) a debtor may exempt any value of an IRA attributable to a rollover made pursuant to a

QDRO. This is also a perfectly rational result, albeit not always fair.

Generally speaking, a qualified-rollover allows a debtor to take funds from one retirement account (commonly, a 401(k)) and transfer that money to another retirement account (typically an IRA) without incurring any immediate tax consequences. This typically occurs when an employee leaves their place of employment, terminating their participation in their employer's 401(k). Without, however, the ability to rollover the account, a taxable event would occur which in many instances could be substantial as often large amounts are accumulated in an employee's 401(k). But by allowing the employee to rollover his retirement account into an IRA, without incurring any immediate tax consequences, the strong policy objective of saving for retirement is encouraged. A QDRO perfectly tracks this scenario. Commonly appreciable sums of money are involved, and like leaving a job, it arises as the result of a significant, and often unforseen, life event: a divorce.

Accordingly, for all these reasons, there is simply no reason to interpret § 2329.66(A)(10)(c) as excluding from its protections contributions made to an IRA under a QDRO. As a result, the Plaintiff has failed to establish that any harm will befall it if Ms. Hartman continues to utilize those funds contained in her IRA, thus making the issuance/extension of an injunction against the IRA account improper under Rule 65 of the Federal Rules of Civil Procedure. To the extent that this ruling conflicts with the court's holding in *In re Hageman*, this Court must respectfully decline to follow that decision. Also, as this ruling addresses the substance of the Plaintiff's objection to Ms. Hartman's claim of exemption, the Court at this time declines to address the procedural defi-

ciency, regarding timeliness, raised by Ms. Hartman as a defense.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that this Court's order, dated December 8, 2005, restraining the Defendant/Debtor, Jane Hartman, from utilizing her Merrill Lynch IRA account, be, and is hereby, TERMINATED.