# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

01-6072MN

_____

| | | |
|---|---|---|
| In re: Ronald J. Nelson | * | |
| | * | |
| Debtor | * | |
| | * | |
| Ronald J. Nelson | * | |
| | * | |
| Debtor - Appellant | * | |
| | * | Appeal from the United States |
| v. | * | Bankruptcy Court for the |
| | * | District of Minnesota |
| James E. Ramette | * | |
| | * | |
| Trustee - Appellee | * | |
| | * | |
| Richard Schieffer, and the law firm | * | |
| of Anderson, Dove, Fretland & | * | |
| Van Valkenburg | * | |
| | * | |
| Creditor - Appellee | * | |

_____

Submitted: March 6, 2002
Filed: March 21, 2002

_____

Before KOGER, Chief Judge, SCHERMER and FEDERMAN, Bankruptcy Judges.

_____

KOGER, Chief Judge.

Debtor/Appellant Ronald J. Nelson was awarded an interest in his former spouse's ERISA-qualified retirement plan in the amount of approximately $71,000.00 pursuant to a divorce decree and a Domestic Relations Order. After the divorce, but prior to receiving a distribution from the retirement plan, Nelson filed for Chapter 7 bankruptcy relief and asserted that the interest was either not property of his bankruptcy estate, or, alternatively, that it was exempt under either 11 U.S.C. § 522(d)(5) or 11 U.S.C. § 522(d)(10)(E). The bankruptcy court ruled that the interest was property of the bankruptcy estate and was not exempt except in the amount of $4,525.00, which was the remaining sum available under the wildcard exemption set forth in 11 U.S.C. § 522(d)(5). Nelson appeals only from the bankruptcy court's ruling that his interest in the ERISA-qualified retirement plan was property of the bankruptcy estate. For the following reasons, we reverse.

## Factual Background

Ronald J. Nelson was divorced from Denise Nelson in September of 2000. As part of the divorce proceedings, the state court awarded Ronald an interest in Denise's Northwest Airlines Retirement Savings Plan for Contract Employees in the amount of $71,089.00, which was the entire marital value of this asset.[1] There is no dispute that this retirement plan is a qualified plan under the Employee Retirement Income Security Act of 1974 ("ERISA"). On November 17, 2000, the state court issued a Domestic Relations Order to effect the distribution to Ronald from the retirement plan. Pursuant to the Domestic Relations Order, Ronald was made an alternate payee under the retirement plan, and is entitled to receive a single lump sum distribution from the plan as soon as administratively feasible after Northwest Airlines determines that the Domestic Relations Order constitutes a qualified domestic relations order and the time for administrative appeals expires. However, in March 2001, Northwest

---

[1] The state court set aside to Denise Nelson the remaining non-marital value of the retirement plan in the sum of $4,987.00 as her non-marital property.

2

Airlines determined that the state court's Domestic Relations Order does not meet the requirements of a qualified domestic relations order, and it will not make a distribution to Ronald pursuant to that order until certain language in the order is modified to its satisfaction. During oral argument counsel informed us that the Domestic Relations Order has not yet been modified, but for purposes of this appeal, counsel agreed that the Domestic Relations Order constitutes a qualified domestic relations order and that only technical amendments are required to satisfy Northwest Airlines. To date, the funds due Ronald have not been distributed to him, but remain in the retirement plan.

On February 26, 2001, Ronald filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Ronald claimed that the interest in the retirement plan was not property of the bankruptcy estate, or, alternatively that it was exempt under either 11 U.S.C. § 522(d)(5) or 11 U.S.C. § 522(d)(10)(E). Both the Chapter 7 Trustee and the creditor/law firm that represented Ronald during his marital dissolution proceeding objected to Ronald's attempt to protect his interest in the retirement plan from distribution to creditors. Following a hearing on the matter, the bankruptcy court determined that Ronald's interest in the retirement plan was property of the bankruptcy estate, and that it was not exempt under 11 U.S.C. § 522(d)(10)(E). The bankruptcy court allowed Ronald to claim the sum of $4,525.00 as exempt, which was the remaining amount available under the wildcard exemption set forth in 11 U.S.C. § 522(d)(5). Ronald timely appeals the bankruptcy court's ruling that his interest in the retirement plan is property of the bankruptcy estate. He does not take issue with the bankruptcy court's rulings with respect to the exemptions claimed under 11 U.S.C. §§ 522(d)(5) and 522(d)(10)(E).

## Issue on Appeal

The sole issue on appeal is whether the bankruptcy court correctly ruled that the $71,089.00 lump sum payment due and owing Ronald as an alternate payee under

his former spouse's ERISA-qualified retirement plan constitutes property of the bankruptcy estate. Ronald contends that the bankruptcy court erred in ruling that benefits payable to an alternate payee from an ERISA-qualified retirement plan are not excluded from the bankruptcy estate by operation of 11 U.S.C. § 541(c)(2). Ronald argues that although there is a clear distinction between a plan participant and an alternate payee, that distinction is irrelevant as to the protections afforded by ERISA section 206(d)(1), which requires that all qualified plans must prevent the assignment or alienation of benefits provided under the plan. Ronald argues that the purpose behind ERISA section 206(d)(1) is to protect the beneficial interest in an ERISA-qualified retirement plan, regardless of to whom that interest belongs, including an alternate payee who is considered a beneficiary pursuant to ERISA section 206(d)(3)(J). Ronald argues that because he is a beneficiary of the Northwest Airlines' ERISA-qualified retirement plan, and because his beneficial interest is subject to the anti-alienation provisions of ERISA, this situation falls under the protective umbrella of Patterson v. Shumate, 504 U.S. 753, 112 S. Ct. 2242, 119 L. Ed. 2d 519 (1992), and his interest in the retirement plan should be excluded from the bankruptcy estate.

Standard of Review

Because the parties do not dispute the factual issues in this case, and the only issue is whether the bankruptcy court correctly interpreted and applied the law, our review is de novo. See Anderson v. Seaver (In re Anderson), 269 B.R. 27, 29 (B.A.P. 8th Cir. 2001)(citing Andersen v. Ries (In re Andersen), 259 B.R. 687, 690 (B.A.P. 8th Cir. 2001); Abernathy v. LaBarge (In re Abernathy), 259 B.R. 330, 332 (B.A.P. 8th Cir. 2001)). "Whether property is included in the bankruptcy estate is a question of law." Drewes v. Vote (In re Vote), 276 F.3d 1024, 1026 (8th Cir. 2002)(quoting Ramsay v. Dowden (In re Central Arkansas Broadcasting Co.), 68 F.3d 213, 214 (8th Cir. 1995)).

Discussion

Property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "The scope of this section is very broad and includes property of all descriptions, tangible and intangible, as well as causes of action." Whetzal v. Alderson, 32 F.3d 1302, 1303 (8th Cir. 1994)(citation omitted). However, pursuant to section 541(c)(2) of the Bankruptcy Code, property that is subject to restrictions on transfer by "applicable nonbankruptcy law" is excluded from property of the bankruptcy estate. 11 U.S.C. § 541(c)(2).[2] See also Whetzal, 32 F.3d at 1303.

In Patterson v. Shumate, 504 U.S. 753, 112 S. Ct. 2242, 119 L. Ed. 2d 519 (1992), the United States Supreme Court held that a debtor's interest in an ERISA-qualified retirement plan could be excluded from the bankruptcy estate pursuant to section 541(c)(2). In Whetzal, the Eighth Circuit observed that the Supreme Court had "relied on ERISA's requirement that approved plans include a provision 'that benefits provided under the plan may not be assigned or alienated.'" Whetzal, 32 F.3d at 1303 (applying holding in Patterson v. Shumate to rule that a Chapter 7 debtor former federal employee's interest in a civil service retirement plan was not property of the bankruptcy estate). Ronald asks us to extend the holding in Patterson v. Shumate to the interest in an ERISA-qualified retirement plan that a debtor has acquired through a qualified domestic relations order pursuant to a marital dissolution proceeding.

The section of ERISA at issue here provides in pertinent part:

---

[2] Section 541(c)(2) of the Bankruptcy Code states: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2).

(d) Assignment or alienation of plan benefits

   (1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

      . . . .

   (3)(A) Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.

    (B) For purposes of this paragraph–

       (i) the term "qualified domestic relations order" means a domestic relations order–

         (I) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan . . . .

      . . . .

    (J) A person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of this chapter a beneficiary under the plan. . . .

    (K) The term "alternate payee" means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant.

29 U.S.C. § 1056(d) (1999). ERISA defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8) (1999). Section 1056(d)(1) of ERISA imposes "an affirmative prohibition on the alienation of benefits provided for by ERISA pension benefit plans." Schantz v. Marine Midland Bank, N.A. (In re Schantz), 221 B.R. 653, 659 (N.D.N.Y. 1998)(citing Mackey v. Lanier Collection Agency & Serv., 486 U.S. 825, 836, 108 S. Ct. 2182, 100 L. Ed. 2d 836 (1988)).

We believe that Patterson v. Shumate does support Ronald's position. In that case, the Supreme Court stated that the plain language of the ERISA statute must be enforced according to its terms. Patterson v. Shumate, 504 U.S. at 757-59, 112 S. Ct. at 2246-47. The Supreme Court opined:

> Having concluded that "applicable nonbankruptcy law" is not limited to state law, we next determine whether the anti-alienation provision contained in the ERISA-qualified Plan at issue here satisfies the literal terms of § 541(c)(2).
> Section 206(d)(1) of ERISA, which states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated," 29 U.S.C. § 1056(d)(1), clearly imposes a "restriction on the transfer" of a debtor's "beneficial interest" in the trust. . . .
> . . . .
> Indeed, this Court itself vigorously has enforced ERISA's prohibition on the assignment or alienation of pension benefits, declining to recognize any implied exceptions to the broad statutory bar. See Guidry v. Sheet Metal Workers Nat. Pension Fund, 493 U.S. 365, 110 S. Ct. 680, 107 L. Ed. 2d 782 (1990).

Id., 504 U.S. at 759-60, 112 S. Ct. at 2247. The Supreme Court continued:

> [O]ur decision today ensures that the treatment of pension benefits will not vary based on the beneficiary's bankruptcy status. See Butner v. United States, 440 U.S. 48, 55, 99 S. Ct. 914, 918, 59 L. Ed. 2d 136 (1979)(observing that "[u]niform treatment of property interests" prevents "a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy,'" quoting Lewis v. Manufacturers National Bank, 364 U.S. 603, 609, 81 S. Ct. 347, 350, 5 L. Ed. 2d 323 (1961)). We previously have declined to recognize any exceptions to ERISA's antialienation provision *outside* the bankruptcy context. See Guidry v. Sheet Metal Workers Nat. Pension Fund, 493 U.S. 365, 110 S. Ct. 680, 107 L. Ed. 2d 782 (1990)(labor union may not impose constructive trust on pension benefits of union official who breached fiduciary duties and embezzled funds). Declining to recognize any exceptions to that

7

provision *within* the bankruptcy context minimizes the possibility that creditors will engage in strategic manipulation of the bankruptcy laws in order to gain access to otherwise inaccessible funds. . . .

Our holding also gives full and appropriate effect to ERISA's goal of protecting pension benefits. See 29 U.S.C. §§ 1001(b) and (c). This Court has described that goal as one of ensuring that "if a worker has been promised a defined pension benefit upon retirement–and if he has fulfilled whatever conditions are required to obtain a vested benefit–he actually will receive it." Nachman Corp. v. Pension Benefit Guaranty Corporation, 446 U.S. 359, 375, 100 S. Ct. 1723, 1733, 64 L. Ed. 2d 354 (1980). In furtherance of these principles, we recently declined in Guidry, notwithstanding strong equitable considerations to the contrary, to recognize an implied exception to ERISA's antialienation provision that would have allowed a labor union to impose a constructive trust on the pension benefits of a corrupt union official. We explained:

> "Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task." 493 U.S., at 376, 110 S. Ct., at 687.

Id., 504 U.S. at 764-65, 112 S. Ct. at 2249-50 (emphasis in original).

However, a more recent United States Supreme Court case, although not directly on point, is very instructive and greatly supports the proposition that Ronald's undistributed interest in the ERISA-qualified retirement plan, even though obtained through a qualified domestic relations order, is not property of the bankruptcy estate. That case is Boggs v. Boggs, 520 U.S. 833, 117 S. Ct. 1754, 138 L. Ed. 2d 45 (1997).

In Boggs, Isaac Boggs worked for South Central Bell from 1949 until his retirement in 1985. Isaac and Dorothy, his first wife, were married when he began

working for the company. They had three sons during the marriage and they remained husband and wife until Dorothy's death in 1979. In 1980, Isaac married Sandra, and they remained married until Isaac's death in 1989. Upon his retirement, Isaac received various benefits from his employer's ERISA-qualified retirement plan, which included a lump-sum distribution in the amount of approximately $150,000.00, which Isaac rolled over into an IRA worth over $180,000.00 at the time of his death; 96 shares of AT&T stock; and a monthly annuity payment in the amount of $1777.67. After Isaac died, Sandra, the surviving second wife, and the sons from the first marriage became involved in a dispute over the ownership of the retirement benefits that had been distributed to Isaac. The sons claimed entitlement to a portion of the retirement benefits pursuant to the terms of Dorothy's will, in which she bequeathed to Isaac one-third of her estate with a life estate in the remaining two-thirds, and she bequeathed to her sons the ownership in the remaining two-thirds, subject to Isaac's life estate. The sons filed a state court action requesting an accounting and seeking a judgment awarding them a portion of the IRA, the AT&T stock, the monthly annuity payments received by Isaac during his retirement and the monthly survivor spouse annuity payments paid and payable to Sandra after Isaac's death. In response, Sandra filed a complaint in the United States District Court for the Eastern District of Louisiana seeking a declaratory judgment that ERISA pre-empted the application of Louisiana community property and succession laws to the extent they recognized the sons' claim to an interest in the retirement benefits. Sandra contested the validity of the testamentary transfer contending, in relevant part, that ERISA pre-empted Dorothy's purported testamentary transfer of her community property interest in the then-undistributed pension plan benefits. The parties agreed that absent pre-emption, Louisiana law would control and that under it Dorothy's will would dispose of her community property interest in Isaac's then-undistributed pension plan benefits. The district court granted summary judgment against Sandra. A divided panel of the Fifth Circuit affirmed.

A majority of the Supreme Court reversed, holding that ERISA pre-empts state law allowing a nonparticipant spouse to transfer by testamentary instrument an interest in undistributed pension plan benefits, and because Dorothy's testamentary transfer was a prohibited assignment or alienation of an interest in the pension plan, the sons had no claim to the retirement benefits. The Supreme Court prefaced its discussion by pointing out that although the case under review involved a community property claim "our ruling will affect as well the right to make claims or assert interests based on the law of any State, whether or not it recognizes community property. Our ruling must be consistent with the congressional scheme to assure the security of plan participants and their families in every State." Boggs, 520 U.S. at 840, 117 S. Ct. at 1760. The Court continued:

> ERISA is an intricate, comprehensive statute. Its federal regulatory scheme governs employee benefit plans, which include both pension and welfare plans. All employee benefit plans must conform to various reporting, disclosure, and fiduciary requirements, see §§ 1021-1031, 1101-1114, while pension plans must also comply with participation, vesting, and funding requirements, see §§ 1051-1086. The surviving spouse annuity and QDRO provisions, central to the dispute here, are part of the statute's mandatory participation and vesting requirements. These provisions provide detailed protections to spouses of plan participants which, in some cases, exceed what their rights would be were community property law the sole measure.
> ERISA's express pre-emption clause states that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." § 1144(a). We can begin, and in this case end, the analysis by simply asking if state law conflicts with the provisions of ERISA or operates to frustrate its objects. We hold that there is a conflict, which suffices to resolve the case.

Id., 520 U.S. at 841, 117 S. Ct. at 1760-61. The Supreme Court further opined that:

> The principal object of [ERISA] is to protect plan participants and beneficiaries. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103

10

S. Ct. 2890, 2896, 77 L. Ed. 2d 490 (1983)("ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans"). Section 1001(b) states that the policy of ERISA is "to protect . . . the interests of participants in employee benefit plans and their beneficiaries." Section 1001(c) explains that ERISA contains certain safeguards and protections which help guarantee the "equitable character and the soundness of [private pension] plans" in order to protect "the interests of participants in private pension plans and their beneficiaries."

Id., 520 U.S. at 845, 117 S. Ct. at 1762.

In <u>Boggs</u>, the Supreme Court discussed in depth the qualified domestic relations order (QDRO) mechanism in 29 U.S.C. § 1056(d)(3), which the Court recognized was a limited exception to the anti-alienation provision of ERISA:

ERISA confers beneficiary status on a nonparticipant spouse or dependent in only narrow circumstances delineated by its provisions. For example, as we have discussed, § 1055(a) requires provision of a surviving spouse annuity in covered pension plans, and, as a consequence, the spouse is a beneficiary to this extent. Section 1056's QDRO provisions likewise recognize certain pension plan community property interests of nonparticipant spouses and dependents. A QDRO is a type of domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan, § 1056(d)(3)(B)(i). A domestic relations order, in turn, is any judgment, decree, or order that concerns "the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant" and is "made pursuant to a State domestic relations law (including a community property law)." § 1056(d)(3)(B)(ii). A domestic relations order must meet certain requirements to qualify as a QDRO. See §§ 1056(d)(3)(C)-(E). QDRO's, unlike domestic relations orders in general, are exempt from both the pension plan anti-alienation provision, § 1056(d)(3)(A), and ERISA's general pre-emption clause, § 1144(b)(7). **In creating the**

11

**QDRO mechanism Congress was careful to provide that the alternate payee, the "spouse, former spouse, child, or other dependent of a participant," is to be considered a plan beneficiary. §§ 1056(d)(3)(K), (J). These provisions are essential to one of REA's [Retirement Equity Act of 1984, Pub. L. 98-397, 98 Stat. 1426] central purposes, which is to give enhanced protection to the spouse and dependent children in the event of divorce or separation, and in the event of death the surviving spouse. Apart from these detailed provisions, ERISA does not confer beneficiary status on nonparticipants by reason of their marital or dependent status.**

Id., 520 U.S. at 846-47, 117 S. Ct. at 1763 (emphasis added). The Court continued:

Respondents contend it is anomalous and unfair that a divorced spouse, as a result of a QDRO, will have more control over a portion of his or her spouse's pension benefits than a predeceasing spouse. Congress thought otherwise. The QDRO provisions, as well as the surviving spouse annuity provisions, reinforce the conclusion that ERISA is concerned with providing for the living. **The QDRO provisions protect those persons who, often as a result of divorce, might not receive the benefits they otherwise would have had available during their retirement as a means of income.** In the case of a predeceased spouse, this concern is not implicated. The fairness of the distinction might be debated, but Congress has decided to favor the living over the dead and we must respect its policy.

**The axis around which ERISA's protections revolve is the concepts of participant and beneficiary**. . . .

Id., 520 U.S. at 854, 117 S. Ct. at 1766-67 (emphasis added).

There are two published post-Boggs bankruptcy court decisions in which each court ruled, on facts almost identical to the situation before us, that a debtor's interest in an ERISA-qualified retirement plan obtained by means of a qualified domestic relations order was property of the bankruptcy estate: In re Hageman, 260 B.R. 852 (Bankr. S.D. Ohio 2001), and Johnston v. Mayer (In re Johnston), 218 B.R. 813

12

(Bankr. E.D. Va. 1998). However, neither bankruptcy court addressed or considered the impact of <u>Boggs</u> on this issue.

In <u>Hageman</u>, as part of a marital dissolution proceeding, the debtor and her former spouse executed a separation agreement which provided in relevant part that the debtor would be awarded $60,000.00 from her former spouse's ERISA-qualified retirement plan by way of a qualified domestic relations order. Seven months later, the debtor filed for Chapter 7 bankruptcy protection and claimed that her interest in the ERISA-qualified retirement plan was either exempt or excluded from property of the estate. One day after the bankruptcy filing, the state court entered a QDRO that provided in pertinent part that the debtor was awarded and assigned as her sole and separate property, $60,000.00 of the balance in her former spouse's ERISA-qualified retirement account, and further provided for a lump sum distribution to the debtor at such time as she elected to receive the distribution following the plan administrator's determination that the order constituted a qualified domestic relations order but in no event later than her former spouse's attainment of age 65 and termination of his employment. The Chapter 7 Trustee filed an objection asserting that the debtor's interest in her former spouse's ERISA-qualified retirement plan was property of the estate and that no grounds existed to support her claim of exemption. As of the last court hearing on the matter, the debtor had not sought a distribution from the plan. The bankruptcy court sustained the Trustee's objection, concluding, in relevant part, that because the proceeds emanated from the qualified domestic relations order rather than from the retirement plan, they could not be excluded by applicable ERISA case law and were property of the bankruptcy estate. The court opined:

> The Debtor's attempts to exclude the $60,000.00 from the estate property based upon <u>Patterson v. Shumate</u> must fail because her property interest does not emanate from the retirement plan itself, but from the QDRO. <u>In re Johnston</u>, 218 B.R. 813, 817 (Bankr. W.D. Va. 1998). The funds in the plan were derived from her former spouse's employment, and it was his plan. If it had been her retirement plan, then

this Court would be bound to conclude that the interest is excluded based upon Patterson v. Shumate and subsequent case law. See, e.g., In re Bartholomew, 214 B.R. 322 (Bankr. S.D. Ohio 1997). But that is not the case, and by virtue of the QDRO and only the QDRO, as of the date of the filing there was a property interest in the fund within the purview and meaning of section 541(a)(1) of the United States Bankruptcy Code.

Hageman, 260 B.R. at 857.

In Johnston, the debtor was awarded an interest in the amount of $84,534.00 in her former husband's ERISA-qualified pension plan pursuant to a property settlement agreement and a qualified domestic relations order. The debtor filed her Chapter 7 bankruptcy petition prior to any distribution of funds from the pension plan. The Chapter 7 Trustee objected to the debtor's position that her interest in the pension funds was not property of the bankruptcy estate. The Trustee did concede that if the court determined that the funds were property of the estate, he would nonetheless be bound by the qualified domestic relations order that directed the funds to be rolled-over directly into an IRA or other qualified plan which would probably entitle the debtor to exempt a portion or all of the funds under state law. The bankruptcy court sustained the Trustee's objection, rejecting the debtor's argument that as a beneficiary of the ERISA-qualified retirement plan, she was entitled to all of the protections provided to beneficiaries under ERISA, including the protection of the anti-alienation provision. In so doing, the court failed to examine the plain language of the relevant ERISA statute, 29 U.S.C. § 1056(d), but instead focused on the definition of beneficiary contained in the retirement plan itself, and the provisions of the retirement plan which distinguished between the treatment of a beneficiary versus an alternate payee under a qualified domestic relations order. The court determined that the terms of the retirement plan failed to support the debtor's assertion that she was entitled to protection under ERISA. The court stated:

We therefore conclude that the funds are not protected by applicable non-bankruptcy law because the debtor is not a plan

14

participant or a beneficiary. Instead, she is simply an alternate payee entitled to the funds pursuant to the qualified domestic relations order. Accordingly, upon disbursement of the funds from the pension plan, they become property of the estate to be rolled-over into an IRA or other qualifying plan in accordance with the qualified domestic relations order.

Johnston, 218 B.R. at 817. After ruling that the funds in question were property of the bankruptcy estate, the court did find that the debtor was entitled to exempt all of the funds under applicable state law. Id. at 818.

We respectfully disagree with the rulings in Hageman and Johnston. The Supreme Court in Boggs very clearly stated that:

**In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the "spouse, former spouse, child, or other dependent of a participant," is to be considered a plan beneficiary. §§ 1056(d)(3)(K), (J). These provisions are essential to one of REA's [Retirement Equity Act of 1984, Pub. L. 98-397, 98 Stat. 1426] central purposes, which is to give enhanced protection to the spouse and dependent children in the event of divorce or separation, and in the event of death the surviving spouse. Apart from these detailed provisions, ERISA does not confer beneficiary status on nonparticipants by reason of their marital or dependent status.**

Boggs, 520 U.S. at 847, 117 S. Ct. at 1763 (emphasis added). The Supreme Court further stated that "[t]he QDRO provisions protect those persons who, often as a result of divorce, might not receive the benefits they otherwise would have had available during their retirement as a means of income. . . . The axis around which ERISA's protections revolve is the concepts of participant and beneficiary." Id., 520 U.S. at 854, 117 S. Ct. at 1767. Boggs clearly states that the beneficiaries under an ERISA-qualified retirement plan who are entitled to the protection of the anti-alienation provision include a plan participant's ex-spouse who is made an alternate payee of the plan pursuant to a qualified domestic relations order. Here, pursuant to

ERISA Ronald has an inalienable interest in a portion of his former spouse's ERISA-qualified retirement plan, and that interest is excluded from his bankruptcy estate.

The appellees also rely on an unpublished decision, In re Yaeger, 1998 WL 356888 (Bankr. D. Minn. June 26, 1998), as support for their contention that Ronald's interest in the ERISA-qualified plan is property of the bankruptcy estate. However, Yeager is readily distinguishable because that situation did not involve an interest in a retirement plan obtained pursuant to a qualified domestic relations order.

## Conclusion

Based on the Supreme Court's highly-instructive Boggs opinion, we hold that Ronald's undistributed interest in his former spouse's ERISA-qualified retirement plan which he obtained pursuant to the qualified domestic relations order is not property of his bankruptcy estate. Accordingly, we reverse the decision of the bankruptcy court.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT