### In re Joanne L. HTHIY, Debtor.

### No. 01–60345–R.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

July 19, 2002.

John C. Lange, Gold, Lange & Majoros, PC, Southfield, MI, for debtor.

Rodney M. Glusac, Detroit, MI, for trustee.

*Opinion Regarding Trustee's
Objection to Exemption*

STEVEN W. RHODES, Chief Judge.

This matter is before the Court on the trustee's objection to the debtor's claim of exemption. The parties have submitted briefs and a stipulation of facts. For the reasons set forth below, the trustee's objection is overruled.

I.

On September 7, 2000, a Consent Judgment of Divorce was entered between Joanne Hthiy and Isaac Hthiy. The divorce judgment awarded Joanne Hthiy a 50% interest in Isaac Hthiy's pension plan and a 50% interest in Isaac Hthiy's 401–K Plan. On November 15, 2001, a qualified

domestic relations order ("QDRO") for the 401–K Plan was entered.

On October 19, 2001, Joanne Hthiy filed her chapter 7 petition. She claimed her interest in her former husband's 401–K Plan either excluded from the estate under § 541(c)(2) or exempt under § 522(d)(10)(E). On December 20, 2001, the trustee filed an objection to the debtor's claim of exemption. The trustee asserts that the property is not excluded from the estate under § 541(c)(2) because it is not held in trust, but is simply the payment of a property settlement pursuant to a judgment of divorce. The trustee also argues that § 522(d)(10)(E) does not apply to property received pursuant to a divorce judgment.

The debtor filed a response to the trustee's objection arguing that, pursuant to the QDRO, she does maintain an interest in her husband's ERISA qualified 401(k) plan and therefore it is excluded from the estate under § 541(c)(2). The debtor also argues that her interest in the plan is exempt under § 522(d)(10)(E) because she maintains a separate ownership interest in a portion of the plan and payment under the plan is on account of age.

On March 13, 2002, the trustee and the debtor submitted a stipulation of facts which provides, in part, that in the event the Court finds the debtor's exemption under § 522(d)(10)(E) proper, the property is reasonably necessary for the support of the debtor.

## II.

The filing of a bankruptcy petition creates an estate comprised of all legal or equitable interests of the debtor in property. 11 U.S.C. § 541(a)(1). However, property which falls under § 541(c)(2) is excluded from the estate. That section provides, "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law, is enforceable in a case under this title." 11 U.S.C. § 541(c)(2) This "provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." *Patterson v. Shumate*, 504 U.S. 753, 758, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992).

In *Patterson v. Shumate*, the Supreme Court held that funds in ERISA-qualified plans constitute one form of the property described in § 541(c)(2) and are thus excluded from the estate. *Patterson*, 504 U.S. at 760, 112 S.Ct. 2242 (The anti-alienation provision required for ERISA-qualification constitutes a trust enforceable under applicable nonbankruptcy law.). Thus, the issue before the Court is whether the debtor has an interest in her former husband's ERISA-qualified plan.

A QDRO is a domestic relations order that "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B). It is a statutory exception to ERISA's strict prohibition against the alienation of pension plan funds. 29 U.S.C. § 1056(d)(3)(A). "The QDRO exception was enacted to protect the financial security of divorcees." *Gendreau v. Gendreau (In re Gendreau)*, 122 F.3d 815, 817 (9th Cir.1997).

The case of *Nelson v. Ramette (In re Nelson)*, 274 B.R. 789 (8th Cir. BAP 2002), involved facts similar to those before the Court. There, the debtor had been awarded an interest in his former wife's ERISA-qualified retirement plan in the amount of $71,000 pursuant to a divorce judgment and a qualified domestic relations order. Upon filing his bankruptcy petition, the debtor asserted that his interest in the

retirement plan was excluded from the estate under § 541(c)(2) or exempt under § 522(d)(5) or § 522(d)(10)(E). The bankruptcy court concluded that the debtor's interest in the plan was property of the estate and was only exempt to the extent of $4,525, which was the remaining amount allowed under § 522(d)(5). The debtor appealed the bankruptcy court's decision that the property was not excluded from the estate.

On appeal, the Bankruptcy Appellate Panel considered the rationale of the Supreme Court's decision in *Patterson v. Shumate*, wherein the Court held that a debtor's interest in an ERISA-qualified plan could be excluded from the estate pursuant to § 541(c)(2), in furtherance of ERISA's goal of protecting pension benefits. The Panel also relied heavily on the Supreme Court's decision in *Boggs v. Boggs*, 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997). There, the pension plan participant's first wife predeceased him. In her will, she transferred an interest in her husband's undistributed pension plan benefits to the couple's children. *Boggs*, 520 U.S. at 836, 117 S.Ct. at 1758. Under Louisiana community property law, the wife was entitled to dispose of her community property interest in her husband's undistributed pension benefits in her will. *Boggs*, 520 U.S. at 837, 117 S.Ct. at 1758. In a dispute between the children and the husband's second wife, the Court held that the Louisiana community property statute, to the extent that it allowed a wife to assign her husband's benefits, is preempted by ERISA's anti-alienation provisions. *Boggs*, 520 U.S. at 844, 117 S.Ct. at 1762. Although not directly on point, the *Nelson* court found that the discussion of ERISA and QDRO's in *Boggs* was instructive and quoted it extensively:

> In *Boggs*, the Supreme Court discussed in depth the qualified domestic relations order (QDRO) mechanism in 29 U.S.C. § 1056(d)(3), which the Court recognized was a limited exception to the anti-alienation provision of ERISA:
>
> > ERISA confers beneficiary status on a nonparticipant spouse or dependent in only narrow circumstances delineated by its provisions.... Section 1056's QDRO provisions ... recognize certain pension plan community property interests of nonparticipant spouses and dependents. A QDRO is a type of domestic relations order that creates or recognizes an alternate payee's right to, or assigns to an alternate payee the right to, a portion of the benefits payable with respect to a participant under a plan, § 1056(d)(3)(B)(i).... *In creating the QDRO mechanism Congress was careful to provide that the alternate payee, the "spouse, former spouse, child, or other dependent of a participant," is to be considered a plan beneficiary. §§ 1056(d)(3)(K), (J). These provisions are essential to one of REA's [Retirement Equity Act of 1984, Pub.L. 98–397, 98 Stat. 1426] central purposes, which is to give enhanced protection to the spouse and dependent children in the event of divorce or separation, and in the event of death the surviving spouse. Apart from these detailed provisions, ERISA does not confer beneficiary status on nonparticipants by reason of their marital or dependent status.*
>
> *Id.*, 520 U.S. at 846–47, 117 S.Ct. at 1763 (emphasis added). The Court continued:
>
> > Respondents contend it is anomalous and unfair that a divorced spouse, as a result of a QDRO, will have more control over a portion of his or her spouse's pension benefits than a predeceasing spouse. Congress thought otherwise. The QDRO provisions, as well as the surviving spouse annuity provisions, reinforce the conclusion that ERISA is concerned with provid-

ing for the living. *The QDRO provisions protect those persons who, often as a result of divorce, might not receive the benefits they otherwise would have had available during their retirement as a means of income.* In the case of a predeceased spouse, this concern is not implicated. The fairness of the distinction might be debated, but Congress has decided to favor the living over the dead and we must respect its policy.

*The axis around which ERISA's protections revolve is the concepts of participant and beneficiary . . . .*

*Id.*, 520 U.S. at 854, 117 S.Ct. at 1766–67 (emphasis added).

*Nelson,* 274 B.R. at 795–96. The *Nelson* court concluded:

*Boggs* clearly states that the beneficiaries under an ERISA-qualified retirement plan who are entitled to the protection of the anti-alienation provision include a plan participant's ex-spouse who is made an alternate payee of the plan pursuant to a qualified domestic relations order. Here, pursuant to ERISA [the debtor] has an inalienable interest in a portion of his former spouse's ERISA-qualified retirement plan, and that interest is excluded from his bankruptcy estate.

*Id.*, 274 B.R. at 798.

The *Nelson* court rejected the holding of *In re Hageman,* 260 B.R. 852 (Bankr. S.D.Ohio 2001), relied on by the trustee here, noting that it failed to take into account the impact of the *Boggs* decision.

In *Hageman,* the debtor attempted to exclude from property of the estate her interest in her former husband's ERISA-qualified plan that had been awarded to her in her divorce judgment pursuant to a QDRO. The court held that the property was not excluded from the estate, stating:

By definition, a QDRO is a means to convey a property interest in a retirement plan to a person other than the plan participant. For this reason it has been held that QDROs create property interests separate and distinct from those of the plan participants rather than creating mere claims . . . .

The Debtor's attempts to exclude the $60,000.00 from the estate property based upon *Patterson v. Shumate* must fail because her property interest does not emanate from the retirement plan itself, but from the QDRO. The funds in the plan were derived from her former spouse's employment, and it was his plan. If it had been her retirement plan, then this Court would be bound to conclude that the interest is excluded based upon *Patterson v. Shumate* and subsequent case law. But that is not the case, and by virtue of the QDRO and only the QDRO, as of the date of the filing there was a property interest in the fund within the purview and meaning of section 541(a)(1) of the United States Bankruptcy Code.

This property interest is not subject to exclusion based upon *Patterson v. Shumate.* Whether it can be characterized as equitable or legal at the time of filing is academic. Suffice it to say there was a property interest on the date of filing that the Trustee was obligated to administer pursuant to section 704(1) of the United States Bankruptcy Code, and one that he may pursue through section 544 of the United States Bankruptcy Code.

To adopt the position of the Debtor would seriously misconstrue the holding and purpose of *Patterson v. Shumate,* which is to protect plan participants, and would deprive her creditors of a significant recovery.

*Hageman,* 260 B.R. at 857–58 (citations omitted).

The Court concludes that the decision of the *Hageman* court is unpersuasive. In

addition to its failure to consider the *Boggs* decision in its analysis, the court also failed to consider the plain language of the statute itself. Section 541(c)(2) refers to "a beneficial interest of the debtor in a trust." The *Hageman* court acknowledged that the debtor did have a property interest in her former husband's pension plan, but denied the exclusion based on the way she obtained that property interest. There is nothing in the statute restricting its application based on the source of the debtor's interest in the trust, and the *Hageman* court's interpretation of § 541(c)(2) reads a requirement into the statute that simply does not exist.

Several cases, in the context of nondischargeability proceedings, have addressed a spouse's interest in a former spouse's pension plan created by a divorce judgment and QDRO. In *Gendreau,* the court held that a divorce decree vested in the former wife an interest in the debtor's pension fund that was not a dischargeable debt in the debtor's subsequent Chapter 7 bankruptcy proceeding. *Id.,* 122 F.3d at 817–18. The court reasoned that the divorce decree, which had ordered the completion of a QDRO to satisfy ERISA's anti-alienation provision, effectively had divested the debtor of half the pension fund. Therefore, the ex-wife's divorce award allowed her to pursue a claim against the pension plan itself, not against the debtor, which meant that the debtor did not personally owe the ex-wife a "debt" that could be discharged in bankruptcy. *Id.* at 819. *See also McCafferty v. McCafferty (In re McCafferty),* 96 F.3d 192 (6th Cir.1996) (The divorce decree awarded the wife a separate ownership interest in the husband's pension benefits.); *Lowenschuss v. Selnick (In re Lowenschuss),* 170 F.3d 923, 930 (9th Cir.1999) (Former wife's interest in pension plan was not dischargeable as the debtor's "debt" because the divorce decree had vested the former wife with an outright ownership interest in 38.7% of the pension assets prior to the debtor's filing his bankruptcy petition.); *Bush v. Taylor,* 912 F.2d 989, 993 (8th Cir.1990) (Divorce decree awarded ex-wife sole and separate property interest in a portion of debtor's pension that was not a dischargeable debt in his subsequent bankruptcy.); *Brown v. Pitzer (In re Brown),* 249 B.R. 303 (S.D.Ind.2000) (same); *Britten v. Britten (In re Britten),* 227 B.R. 820, 821–22 (Bankr.S.D.Ind.1997) (similar) (collecting cases).

Accordingly, the Court concludes that the debtor holds a separate property interest in her former husband's ERISA-qualified plan which is excluded under § 541(c)(2).

Because the property is excluded, it is not necessary to address the debtor's claim of exemption under § 522(d)(10)(E).