**In re Tammy L. CARTER–BLAND, Debtor.**

**No. 07–56277.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division,
at Columbus.

Feb. 20, 2008.

---

Lee C. Mittman, Esq., Columbus, OH, for Debtor.

*MEMORANDUM OPINION AND ORDER ON OBJECTION OF TRUSTEE TO EXEMPTION CLAIM IN DEBTOR'S QDRO ACCOUNT*

C. KATHRYN PRESTON, Bankruptcy Judge.

## I. Introduction

This cause came on for hearing on December 18, 2007 to consider: (i) the Objection of Trustee to Exemption Claim in Debtor's QDRO Account (Doc. # 13) ("Objection") filed by Larry J. McClatchey, Chapter 7 Trustee ("Trustee"), and (ii) the Debtor's Memorandum Contra (Doc. # 15) the Objection. The Trustee also filed a post-hearing memorandum in support of the Objection (Doc. # 19). Present at the hearing were the Debtor Tammy L. Carter–Bland ("Debtor") and her counsel, Lee C. Mittman, and counsel to the Trustee, Stewart H. Cupps.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

This matter involves the Debtor's interest in her former husband's employee stock ownership plan. The Trustee argues that the Debtor does not have an interest in the plan because her interest arises solely from a qualified domestic relations order. The Trustee also argues that, because the Debtor does not have an interest in the plan, she does not have an interest in the plan trust, which is the only interest that the Bankruptcy Code would exclude from the estate. In response, the Debtor argues that she has an interest in the plan and plan trust under ERISA and that, under § 541(c)(2) of the Bankruptcy Code, her interest does not constitute property of her estate.

The Court agrees with the Debtor that her interest in the Plan is not property of her bankruptcy estate. The Court, therefore, overrules the Trustee's Objection.[1]

## II. Facts

Based on the evidence adduced at the hearing, the Court finds as follows:

### A. The Plan and Circumstances Giving Rise to the QDRO

In 1997, the Debtor and Michael Andrew Bland ("Mr.Bland") were married. During the marriage, Mr. Bland had an interest in the Amsted Industries Incorporated Employees' Stock Ownership Plan ("Plan"), as amended and restated effective October 1, 2004 (the "Effective Date"). Plan assets are held by a trustee in a trust. In this regard, § 1.3 of the Plan, which is entitled "Trustee; Trust Agreement" provides as follows:

> Amounts contributed under the Plan are held and invested, until distributed, by the trustee (the *"Trustee"*) appointed by the Company through its Board of Directors. The Trustee acts in accordance with the terms of a trust agreement between the Company and the Trustee, which trust agreement is known as the Amsted Industries Incorporated Employees' Stock Ownership Trust (the *"Trust"*). The Trust implements and forms a part of the Plan. The provisions of and benefits under the Plan are subject to the terms and provi-

---

1. The Trustee also argues that the Debtor's interest in the Plan is exempt, if at all, only to the extent of $1, as set forth in her Schedule C listing exempt assets, with the remaining value subject to the Trustees' administration. The Debtor counters that if the Court finds the Debtor's interest to be property of the estate, the full value of her interest in the Plan is exempt. In light of the Court's ruling that the Debtor's interest is not property of her estate, the Court need not reach this issue.

sions of the Trust. In the event of any conflict between the Plan and the Trust, the terms of the Trust shall control. *Plan* § 1.3. In addition, "[a]ll contributions hereunder will be paid into and credited to the Trust and all benefits hereunder and expenses chargeable thereto not paid directly by the Company will be paid from the Trust and charged thereto...." *See* Plan § 15.1.

To be a "Participant" under the Plan, a person must either: (a) have been a Participant in the Plan immediately prior to the Effective Date; or (b) be employed by Amsted Industries Incorporated, or by certain of its control group members or related companies. *See* Plan § 2.1(a). Mr. Bland is a Participant as defined by the Plan, but the Debtor is not. In general, distributions from the Plan are made to Participants after they retire. *See* Plan §§ 9, 11. The Plan, however, provides for distributions to "alternate payees" prior to a Participant's retirement:

> The Administrator shall direct distribution of the amount of a Participant's Account balances assigned to an alternate payee under a qualified domestic relations order ("QDRO") (as defined in [Internal Revenue] Code Section 414(p)) approved pursuant to procedures established by the Plan Administrator. Distribution to an alternate payee shall commence no earlier than on the date the alternate payee reaches 65, or the fifth anniversary of the order, if sooner, irrespective of whether the Participant has then attained his "earliest retirement age" within the meaning of Section

206(d)(3)(E) of ERISA and Section 414(p)(4)(B).

Plan § 11.6.

Section 14.1 of the Plan, entitled "Interests Not Transferable," imposes a restriction on the transfer of interests of Participants and their beneficiaries:

> The interests of Participants *and their beneficiaries* under the Plan are not in any way subject to their debts or other obligations and, except as may be required by the tax withholding provisions of the [Internal Revenue] Code or any state's income tax act, may not be voluntarily or involuntarily sold, transferred, alienated or assigned. Notwithstanding the foregoing, the Plan shall comply with any domestic relations order that, in accordance with procedures established by the Administrator, is determined to be a qualified domestic relations order (as defined in [Internal Revenue] Code Section 414(p)(1)(A)), and shall comply with any judgment or settlement to the extent required by [Internal Revenue] Code Section 401(a)(13).

Plan § 14.1 (emphasis added).[2]

## B. The QDRO

On October 17, 2006 (the "Marriage Dissolution Date"), the Fairfield County Court of Common Pleas, Division of Domestic Relations ("State Court") dissolved the Debtor's marriage to Mr. Bland and entered a qualified domestic relations order (the "QDRO"). In the QDRO, the State Court assigned to the Debtor (who is referred to in the QDRO as the "Alternate Payee") a portion of Mr. Bland's interest in the Plan (which is referred to as the "ESOP"). In this regard, Section A of the

---

**2.** Section 14.1 speaks of "beneficiaries." In other sections, the Plan uses the capitalized term "Beneficiary," which is defined as "the natural or legal person or persons designated by a Participant as the Participant's beneficia-

ry under the last effective beneficiary designation form filed with the Administrator under this Section and to whom the Participant's benefits would be payable under this Section." Plan § 11.7

QDRO provides in pertinent part as follows:

### 7. *Assignment of ESOP Benefits to Alternate Payee*

The Alternate Payee is hereby assigned *728.413478 SHARES* of the Participant's vested accrued benefit under the ESOP as of the Marriage Dissolution Date.

. . . .

### 10. *Payment of Assigned Benefits*

The ESOP benefits assigned hereunder shall be distributed to the Alternate Payee in accordance with the timing provisions and benefit distribution procedures applicable under the ESOP's plan document in effect when the QDRO is executed.

QDRO §§ A.7, A.10.

The QDRO does not mandate the timing of the payment of benefits to the Debtor or require the administrator of the Plan ("Administrator") to do anything not permitted by the Plan. In this regard, Section B of the QDRO provides:

3. *Restrictions.* The terms and provisions of this Order are not to be construed to:

(a) require a Plan to provide any type or form of benefits, or any option (with the exception of payment to the Alternate Payee after the Participant attains his Earliest Retirement Age or as of some earlier permissible date) not otherwise provided for under the Plan;

(b) require a Plan to provide benefits greater than that which would otherwise be payable under the Plan with respect to the Participant;

(c) ... or require the payment of such benefits in any manner ... that would cause this Order to fail to qualify as a Qualified Domestic Relations Order.

QDRO §§ B.3.

### C. Events Following the Entry of the QDRO

By a letter dated November 3, 2006, the Administrator advised the Debtor and Mr. Bland that he had "made a determination that [the QDRO] is 'qualified' within the meaning of Section 206 of [ERISA] and the corresponding provisions of Section 414(p) of the Internal Revenue Code ..." The Administrator also stated that, because the Debtor "was not age 65 when this QDRO was approved, she will be eligible to receive a payment of her account five (5) years after the QDRO was approved."

Prior to March 31, 2007, the Debtor, pursuant to § 6.2 of the Plan, diversified her investment, resulting in small cash payments to her and a reduction of the number of shares she owned. As of March 31, 2007, the value of her shares was $48,978.21.

On August 10, 2007 ("Petition Date"), the Debtor filed a Petition for Relief under Chapter 7 of the Bankruptcy Code. Larry McClatchey is the duly appointed Chapter 7 Trustee. On her Schedule B—PERSONAL PROPERTY, Debtor disclosed the interest in her former husband's pension plan, but assigned a value of only $1.00, inasmuch as she has no current right to take possession of or spend the asset. Although she believes that her interest is not property of the bankruptcy estate pursuant to § 541(c) of the Bankruptcy Code, on her Schedule C—PROPERTY CLAIMED EXEMPT, the Debtor claimed her interest in the Plan exempt under Ohio Rev.Code § 2329.66(A)(10)(a), noting in the description of the asset that current value of the asset was $1.00; but under the column titled "Value of Claimed Exemp-

tion" she inserted "100%". On October 18, 2007, the Trustee filed the Objection.

## III. Discussion

This case implicates both the Bankruptcy Code and the Employee Retirement Income Security Act of 1974 ("ERISA"). A "qualified domestic relations order," is recognized by ERISA as an order of a state domestic relations court that assigns to a former spouse or other alternate payee a right to receive all or a portion of benefits payable under a retirement plan to the retirement plan participant. 29 U.S.C. § 1056(d)(3)(B). "By definition, a QDRO is a means to convey a property interest in a retirement plan to a person other than the plan participant." *In re Hageman*, 260 B.R. 852, 857 (Bankr. S.D.Ohio 2001).

### A. Under ERISA, the Debtor Has an Interest in the Plan.

The Trustee does not dispute that the Plan and the QDRO's effect on it are governed by ERISA. In pertinent part, ERISA provides as follows:

(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

. . .

(3) (A) Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.

. . .

(J) A person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of this chapter a beneficiary under the plan. . . .

(K) The term "alternate payee" means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant.

. . . .

29 U.S.C. § 1056(d).

The principal goal of ERISA is to "protect plan participants and [their] beneficiaries." *See Boggs v. Boggs*, 520 U.S. 833, 845, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997).[3] Accordingly, ERISA's prohibition on the assignment or alienation of pension plan benefits articulated in 29 U.S.C. 1056(d)(1) does not apply to an assignment pursuant to a qualified domestic relations order. *See* 29 U.S.C. § 1056(d)(3). The Trustee does not dispute that the QDRO is a quali-

---

**3.** In *Boggs*, the children of a deceased participant in a pension plan argued that they were entitled to the undistributed pension plan benefits by virtue of Louisiana state law and a testamentary instrument executed by their mother, the deceased first wife of the participant. By the testamentary instrument, the first wife purported to transfer her interest in the plan benefits to her children pursuant to state law even though she was neither a participant nor a beneficiary under the plan. The surviving second wife of the participant, who was a "beneficiary" of the plan by virtue

of ERISA, argued that only she was entitled to the plan benefits. The Supreme Court held in favor of the surviving second wife:

The axis around which ERISA's protections revolve is the concepts of participant and beneficiary. When Congress has chosen to depart from this framework, it has done so in a careful and limited manner. Respondents' claims, if allowed to succeed, would depart from this framework, upsetting the deliberate balance central to ERISA. . . . Their state-law claims are pre-empted.

*Boggs*, 520 U.S. at 854, 117 S.Ct. 1754.

fied domestic relations order. Instead, the Trustee argues that the Debtor does not have an interest in the Plan because her interest arises from the QDRO, not as a participant in the Plan. However, to the contrary, "[i]n creating the QDRO mechanism Congress was careful to provide that the alternate payee . . . is to be considered a plan beneficiary." *Boggs,* 520 U.S. at 847, 117 S.Ct. 1754. Under ERISA, "[a] person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of this chapter a beneficiary under the plan." 29 U.S.C. § 1056(d)(3)(J). This provision is designed "to give enhanced protection to the spouse and dependent children in the event of divorce or separation." *Boggs,* 520 U.S. at 847, 117 S.Ct. 1754. Indeed, many courts which have addressed the question, have found that a qualified domestic relations order creates a property interest in the plan separate and distinct from the interest of the plan participant, rather than creating a mere claim. *In re Wilson,* 158 B.R. 709 (Bankr.S.D.Ohio 1993); *In re Debolt,* 177 B.R. 31, 36 (Bankr.W.D.Pa.1994); *In re Brown,* 168 B.R. 331, 334–335 (Bankr.N.D.Ill.1994); *Brown v. Pitzer (In re Brown),* 249 B.R. 303, 308–310 (S.D.In.2000).

Given the Debtor's status as an alternate payee and thus Plan beneficiary, the Trustee's argument that the Debtor has no interest in the Plan is without merit. The Debtor has an interest in the Plan, and the fact that her interest arose via the QDRO rather than as a participant in the Plan is of no moment. As such, the provisions of the Plan and ERISA protect her interest therein. The question then becomes whether her interest is property of the bankruptcy estate.

## B. The Bankruptcy Code Also Protects the Debtor's Interest.

If the Bankruptcy Code required the Debtor to turn over her interest in the Plan to the Trustee, bankruptcy law, like the state law at issue in *Boggs,* would be in conflict with ERISA. The Bankruptcy Code, however, does not require—and in fact protects the Debtor against—liquidation of the Debtor's interest by the Trustee. *See Nelson v. Ramette (In re Nelson),* 322 F.3d 541, 544–45 (8th Cir. 2003) (holding that the debtor's interest in former spouse's retirement plan arising from qualified domestic relations order was excluded from property of the estate); *Ostrander v. Lalchandani (In re Lalchandani),* 279 B.R. 880, 885–86 (1st Cir. BAP 2002) (same); *In re Farmer,* 295 B.R. 322, 324–25 (Bankr.W.D.Wis.2003) (same); *In re Hthiy,* 283 B.R. 447, 450–51 (Bankr. E.D.Mich.2002) (same).

The relevant provision of the Bankruptcy Code, § 541(c), provides as follows:

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

(A) that restricts or conditions transfer of such interest by the debtor; or

(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applica-

ble nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c).

 The Sixth Circuit has adopted a three-part test for determining whether a debtor's interest in property is excluded from property of the estate under § 541(c)(2): "First, does the debtor have a beneficial interest in a trust? Second, is there a restriction on the transfer of that interest? Third, is the restriction enforceable under nonbankruptcy law?" *See Taunt v. Gen. Ret. Sys. of Detroit (In re Wilcox)*, 233 F.3d 899, 904 (6th Cir.2000); *see also Rhiel v. OhioHealth Corp. (In re Hunter)*, 380 B.R. 753, 757 (Bankr. S.D.Ohio 2008). The Debtor bears the burden of proof on each of these elements. *See, e.g., Rhiel v. Adams (In re Adams)*, 302 B.R. 535, 540 (6th Cir. BAP 2003) ("The Debtors bear the burden of demonstrating that all the requirements of § 541(c)(2) have been met before the property in question can be effectively excluded from the estate.").

### 1. The Debtor Has a Beneficial Interest In a Trust.

 The Trustee does not dispute that the Plan assets are held in the Trust or that the Trust is a trust for purposes of § 541(c). Instead, the Trustee contends that the Debtor does not have an interest in the Trust because her interest is derived from the QDRO, not from the Plan. As discussed above, although the Debtor obtained her interest in the Plan by means of the QDRO, she nonetheless has an interest in the Plan. Indeed, under ERISA, as an alternate payee she is a Plan beneficiary. *See* 29 U.S.C. § 1056(d)(3)(J); *Boggs*, 520 U.S. at 847, 117 S.Ct. 1754. As a Plan beneficiary, she has an interest in the Trust. *See, e.g., Hthiy*, 283 B.R. at 451 ("[T]here is nothing in [§ 541(c)(2)] restricting its application based on the

source of the debtor's interest in the trust. . . ."). The fact that the Debtor's interest in the Plan arose as a consequence of the QDRO is immaterial. Section 541(c)(2) requires only that the Debtor have an interest in the Plan, without distinction as to how the interest is acquired.

### 2. There Is a Restriction on the Transfer of the Debtor's Interest.

The second prong of the *Wilcox* test is whether there is a restriction on the transfer of the Debtor's interest. The Plan imposes a transfer restriction on the Debtor's interest:

> The interests of Participants *and their beneficiaries* under the Plan are not in any way subject to their debts or other obligations and, except as may be required by the tax withholding provisions of the [Internal Revenue] Code or any state's income tax act, *may not be voluntarily or involuntarily sold, transferred, alienated or assigned.*

Plan § 14.1 (emphasis added).

Accordingly, the Court finds that the second prong is met.

### 3. The Transfer Restriction Is Enforceable.

 The third prong of the *Wilcox* test is whether the transfer restriction is enforceable under applicable nonbankruptcy law. The restriction set forth in § 14.1 of the Plan is enforceable under the applicable nonbankruptcy law of Title I of ERISA. *See Patterson*, 504 U.S. at 759, 112 S.Ct. 2242 ("ERISA, which states that '[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated,' 29 U.S.C. § 1056(d)(1), clearly imposes a 'restriction on the transfer' of a debtor's 'beneficial interest' in the trust."). Under *Patterson*, therefore, the Plan's transfer restriction is

enforceable under applicable law for purposes of § 541(c)(2).

ERISA's anti-alienation provision does not apply to qualified domestic relations orders; there is, however, nothing in ERISA or other applicable law that makes the anti-alienation provision inapplicable to an interest in an ERISA plan created as a consequence of a qualified domestic relations order. In fact, quite to the contrary: in *Nelson,* the Bankruptcy Appellate Panel for the Eighth Circuit recognized that Congress intended that:

> [A]ll persons conferred beneficiary status via a QDRO be given the same protections ERISA affords to plan participants. Those protections include ERISA's anti-alienation provisions. Therefore, a person who acquires an interest in an ERISA plan via a QDRO can exclude that interest from a bankruptcy estate in the same way that the plan participant herself could have excluded it.

*Nelson,* 322 F.3d at 545; *see also Lalchandani,* 279 B.R. at 886; *Farmer,* 295 B.R. at 324; *Hthiy,* 283 B.R. at 451.[4]

In the end, the "plain language of the Bankruptcy Code and ERISA is [the] determinant." *Patterson v. Shumate,* 504 U.S. 753, 757, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). Both statutes lead to the same result. The Court's decision "ensures that the treatment of pension benefits will not vary based on the beneficiary's bankruptcy status," and "gives full and appropriate effect to ERISA's goal of protecting pension benefits." *Patterson,* 504 U.S. at 764, 112 S.Ct. 2242.

### IV. Conclusion

In light of the foregoing, the Court finds that: (i) the Debtor's interest in the Plan is a beneficial interest in a trust: (ii) her interest is subject to a transfer restriction under the Plan; and (iii) the restriction is enforceable under ERISA. As a result, the Debtor's interest in the Plan is not property of her estate. Accordingly, the Court overrules the Objection.

**IT IS SO ORDERED.**

---

4. In *Hageman,* the court held that the debtor's interest in her former spouse's retirement plan could not be excluded from her bankruptcy estate. Unlike the QDRO, however, the domestic relations order at issue in *Hageman* gave the debtor "the unfettered ability to obtain immediate payment without regard to the terms of the plan." *Hageman,* 260 B.R. at 858. It appears, therefore, that the order at issue in *Hageman* might not have truly been a qualified domestic relations order even though it was denominated as such. *See* 29 U.S.C. § 1056(d)(3)(D)(i) (providing that domestic relations order is a qualified domestic relations order only if such order "does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan."). If the domestic relations order in *Hageman* was not truly a qualified domestic relations order, then the debtor would not have been a beneficiary under the plan. In addition, it is not clear that the retirement plan assets in *Hageman* were held in a trust, as are the Plan assets in the instant case. To the extent, therefore, that *Hageman* is limited to its facts, the decision of this Court and the other decisions cited above are not necessarily in conflict with it.